OPINION
{¶ 1} This is an appeal by defendant-appellant, Roy L. Hoffman, from a judgment of the Franklin County Municipal Court, Environmental Division, from a finding of guilty on four counts of cruelty to animals. Appellant was sentenced to a fine of $750 on each of the four counts, plus court costs, and placed on five years probation. The fine was held in abeyance pending successful completion of probation. Appellant filed a notice of appeal and raised the following assignments of error: *Page 2 
 ASSIGNMENT OF ERROR NO. I
 THE TRIAL COURT ERRED BY FAILING TO ACQUIT THE DEFENDANT ON FOUR COUNTS OF ANIMAL CRUELTY, IN VIOLATION OF O.R.C. 959.13A(1), AND THEREAFTER FINDING DEFENDANT GUILTY OF THESE OFFENSES, UPON THE BASIS THAT THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THESE CONVICTIONS.
 ASSIGNMENT OF ERROR NO. II
 THE VERDICTS WHICH FOUND DEFENDANT GUILTY ON FOUR COUNTS OF ANIMAL CRUELTY, IN VIOLATION OF O.R.C. 959.13A(1) WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 2} Appellant was charged with six counts of cruelty to animals, in violation of R.C. 959.13(A)(1). Appellant waived a jury trial, and the matter was tried before the trial court. The first witness for the state was Kerry Manion, an animal investigator and the chief humane agent with the Capital Area Humane Society ("Humane Society"). On March 17, 2005, the Humane Society received a complaint from a reporter for WCMH, who stated he observed several dead animals in a field on appellant's property.
 {¶ 3} Manion and several other Humane Society agents met the reporter at the property and, upon arriving at the scene, Manion contacted Dr. Rachel Star, a staff veterinarian with the Humane Society. Manion then contacted appellant, who owns the farm property. Manion informed appellant that there were several dead animals in a field, and appellant indicated he would attempt to remove the animals that evening. Appellant stated he had not been able to remove the animals before then because of rain. After talking to appellant, Manion and Star walked into the field and located two dead cows. Manion testified that the condition of the ground was very soft and muddy.
 {¶ 4} The following day, March 18, Manion and investigators returned to the field and discovered two more dead cows. At trial, the animals were identified by number. *Page 3 
The ground conditions were again very soft and muddy. When Manion returned to the property on March 18 and 20, Manion did not observe any measures to section off the area that was particularly muddy. He observed the animals traveling for food and a videotape was taken of the cows as they traveled. They were experiencing difficulty traveling through the location because of the mud. In certain locations, some of the cows had mud up to their chests.
 {¶ 5} Manion and agents returned on March 21 to assess the field conditions and to plan the removal of some live cattle. Two live cows were removed for a closer examination. The deceased animals were removed from the property and taken to a laboratory at The Ohio State University. A necropsy was performed by veterinarians.
 {¶ 6} At the close of the city's case, appellant made a motion for judgment of acquittal as to all of the charges. The trial court dismissed charges five and six pertaining to the live cows, but denied the motion as to the other charges. Appellant's son, Mike Hoffman, testified on behalf of appellant.
 {¶ 7} On July 31, 2007, appellant filed a motion for judgment of acquittal. By entry filed September 26, 2007, the trial court found appellant guilty of four of the charges (1), (2), (3), and (4), and dismissed one of the charges (5), although the trial court had orally granted the Crim. R. 29 motion for acquittal during trial as to charges five and six. (Tr., at 321.) The trial court imposed a suspended 360-day sentence and imposed a fine, with the fine to be held in abeyance pending successful completion of a five-year probation reporting period.
 {¶ 8} By the first assignment of error, appellant contends that the trial court erred by failing to acquit appellant on four counts of animal cruelty, in violation of R.C. 959.13(A)(1), and thereafter finding appellant guilty of these offenses, upon the basis that *Page 4 
there was insufficient evidence to support these convictions. The standard of review for sufficiency of the evidence is if, while viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." State v. Thompkins (1997),78 Ohio St.3d 380, 386.
 {¶ 9} R.C. 959.13(A)(1) provides, as follows:
 (A) No person shall:
 (1) * * * deprive one [an animal] of necessary sustenance, * * * impound or confine an animal without supplying it during such confinement with a sufficient quantity of good wholesome food and water[.]
 {¶ 10} Recklessness is sufficient mens rea to sustain a conviction pursuant to R.C. 959.13(A)(1). See State v. Bergen (1997),121 Ohio App.3d 459; State v. Lapping (1991), 75 Ohio App.3d 354. R.C. 2901.22(C) defines "recklessly," as follows:
 A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.
 {¶ 11} Appellant argues that the evidence is insufficient to demonstrate that he deprived the animals of necessary sustenance, but, rather, that there were available supplies of food and water where the herd was located. It was the unusual weather conditions that resulted in the cows becoming mired in mud and not a lack of available food and water. *Page 5 
 {¶ 12} In this case, Manion, the chief humane agent with the Humane Society testified that he was on the property for several hours over the course of several days. He observed the conditions of the property and the cows and observed the animals traveling for food and water. He observed that several cows had difficulty traveling through locations because of the mud and some were in the mud up to their chests. He testified he felt qualified to look at the animals and determine whether a crime was committed. (Tr., at 65.) On March 17, he determined there was probable cause to seek a search warrant to remove the dead animals for necropsies to determine the cause of death. The pathology reports stated the animals were dehydrated and emaciated. In his opinion, there was a combination of factors contributing to the death of the cows. One factor was the weather and the unusual amount of rain, and the other factor was that the cows did not have adequate food and water. (Tr., at 91.)
 {¶ 13} Finally, William Shulaw testified as an expert in veterinary medicine and animal husbandry and farm practices. He visited the farm on March 22, 2005. He described general expectations of animal owners, which include regularly observing their animals to determine whether they are accessing food and water and whether they are actually consuming the food and water. In describing general animal habits, he indicated cows often go to water as a group. There are often normal routes to food and water through the pastures that the cows follow. The cows often take habitual paths to the food and water. He testified that it is reasonable for most farmers to make provisions by putting the feed somewhere else or provide water somewhere else or change the conditions so the cows have access if the cows were not able to access the feed. (Tr., at 232.) *Page 6 
 {¶ 14} Shulaw described the Hoffman farm's conditions. Some of the areas especially around the barn had an accumulation of water and were very muddy. There were water puddles in the pasture field. Two of the animals had been retrieved from a path to a shelter where there was water and a feed bin and in the center of that normal path was a deep area of mud. The traffic areas where the cows traveled were very muddy. Finally, he testified that the cows were confined. Although they were in a pasture, they were restricted to the area within the farm by a fence.
 {¶ 15} The city was required to demonstrate, while viewing the evidence in a light most favorable to them, that appellant recklessly confined the cows while depriving them or without supplying them with a sufficient quantity of good, wholesome food and water. It is not a requirement that the evidence prove the cows were starved to death as a result of appellant's failure to provide a sufficient quantity of good, wholesome food and water. The evidence must merely show that the confined animals were deprived of sufficient food, not all food.State v. Donnelly (Feb. 22, 1995), Summit App. No. 16821.
 {¶ 16} The city provided the testimony of a board-certified pathologist who conducted the necropsies on the four dead cows removed from appellant's farm. In all four cases, the pathologist found that the cows had very little fat internally, were dehydrated, and the cause of death was likely related to severe dehydration and emaciation. She testified that she found no evidence of any chronic illness that would have prevented the cows from eating or lead to their death. The lack of fat in the animals was abnormal, and it takes weeks to lose all the fat stored in the body.
 {¶ 17} The city also provided evidence that appellant was the owner of the farm upon which the cows were found. Manion talked with appellant on March 17, 2005, to inform him he was there to investigate the death of the animals, and appellant stated that *Page 7 
he knew about the dead cows and planned to remove them that night but had been unable to do so previously because of the rain. (Tr., at 23.) Appellant's son, Mike Hoffman, testified that he grew up living on the farm that was operated by his father. (Tr., at 324.) Appellant is on the farm 24 hours a day, supervising the operations on the farm. (Tr., at 367.) Although Mike has been primarily responsible for feeding the cattle since he graduated from high school in 1991, if he is unable to do so, either his brother, or appellant, does the daily feeding. Mike also testified that, after losing a few cattle, he talked to appellant and decided to add Aureomycin to the feed, which is a medication to help with things like pneumonia and fever in cattle. (Tr., at 337.)
 {¶ 18} The testimony of Manion, Shulaw, and the photographic and video evidence established that the cows accessed their food and water by using paths that were excessively muddy. Many of the cows were up to their chests in mud. Manion testified that the conditions on the farm during the five days he visited were the same. He did not observe any rope, fencing, or any measures to prevent the cows from using the muddy paths. Although Mike Hoffman testified he added grain in the woods, Manion testified he did not see any additional food until March 20, the third day he was on the farm, when there was additional hay in the field. This evidence is sufficient to find that appellant recklessly confined the cows without supplying a sufficient quantity of wholesome food and water. Appellant's first assignment of error is not well-taken.
 {¶ 19} By the second assignment of error, appellant contends that the verdicts were against the manifest weight of the evidence. The test for determining whether a conviction is against the manifest weight of the evidence differs somewhat from the test as to whether there is sufficient evidence to support the conviction. With respect to manifest weight, the evidence is not construed most strongly in favor of the prosecution, *Page 8 
but the court engages in a limited weighing of the evidence to determine whether there is sufficient, competent credible evidence which could convince a reasonable trier of fact of appellant's guilt beyond a reasonable doubt. See State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387.
 * * * Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis added.) Black's [Law Dictionary (6th Ed. 1990)] at 1594). Thompkins, at 387.
 {¶ 20} Appellant's son, Mike Hoffman, testified on behalf of appellant. Hoffman testified that, while he was primarily responsible for feeding the cows, if he was unable to do so, and his brother was unable to do so, his father would feed them. He testified that appellant lived on the property and oversaw the operations. Hoffman consulted appellant concerning adding Aureomycin to the feed. Hoffman's testimony illustrates that appellant was active in the operations of the farm and responsible for the cows.
 {¶ 21} As stated above in the first assignment of error, the testimony was sufficient to find that the cows were recklessly confined without supplying a sufficient quantity of wholesome food and water. The pathologist found that the cows had very little fat internally, were dehydrated, and the cause of death was likely related to severe dehydration and emaciation. Appellant and his son made no provision to rope off or fill in the muddy areas so the cows would have better access to the feed and water other than the regular path that they used, which had some cows traveling through chest-deep mud and some of them becoming mired in mud and dying. In all four cases of the dead cows, *Page 9 
the pathologist found that the cows had very little fat internally and were dehydrated. The pathologist testified that she found no evidence of any chronic illness that would have prevented the cows from eating or lead to their death. The lack of fat in the animals was abnormal, and it takes weeks to lose all the fat stored in the body. Thus, the cows were deprived of a sufficient quantity of wholesome food and water for weeks. Despite appellant and his son being aware of the muddy conditions, and the difficulty the cows were having traversing the same paths to food and water, nothing was done to prevent the cows from traversing the same routes. This behavior was reckless and led to a deprivation of a sufficient quantity of wholesome food and water. There is sufficient, competent credible evidence which could convince a reasonable trier of fact of appellant's guilt beyond a reasonable doubt, and the convictions are not against the manifest weight of the evidence. Appellant's second assignment of error is not well-taken.
 {¶ 22} For the foregoing reasons, appellant's two assignments of error are overruled, and the judgment of the Franklin County Municipal Court, Environmental Division, is affirmed.
Judgment affirmed.
SADLER and TYACK, JJ., concur. *Page 1