[Cite as *State v. Wilkins*, 2020-Ohio-3428.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                    :

      Plaintiff-Appellee,                   :               No. 18AP-797
                                                                (M.C. No. 2017ERB 70650)
                                                 :               No. 18AP-798
v.                                                              (M.C. No. 2017ERB 70717)

                                                 :
Terry J. Wilkins,                                                (REGULAR CALENDAR)

      Defendant-Appellant.                  :

                                                 :

---

D E C I S I O N

Rendered on June 23, 2020

---

**On brief:** *Zachary M. Klein*, City Attorney, *Bill R. Hedrick*, and *Orly Ahroni*, for appellee. **Argued:** *Orly Ahroni.*

**On brief:** *Frederick D. Benton, Jr., L.P.A.*, and *Frederick D. Benton, Jr.*, for appellant. **Argued:** *Frederick D. Benton, Jr.*

---

APPEALS from the Franklin County Municipal Court

BROWN, J.

{¶ 1} Defendant-appellant, Terry J. Wilkins, appeals from his convictions in the Franklin County Municipal Court for failure to obtain permits and failure to display proper signage regarding restricted snakes and for cruelty to animals. For the following reasons, we affirm in part and reverse in part the trial court judgment.

{¶ 2} In 2011, an Ohio man released over 50 exotic animals before committing suicide. Partially in response to that incident, the General Assembly passed the Ohio Dangerous Wild Animals and Restricted Snakes Act, R.C. 935.01-935.99. The Act is designed to regulate prospectively the acquisition, purchase, sale and transfer of

"dangerous wild animals" and "restricted snakes" as defined in sections R.C. 935.01(C) and (L). *Wilkins v. Daniels*, 744 F.3d 409, 411 (6th Cir.2014).

{¶ 3} On December 14, 2016, agents of the Enforcement Division of the Ohio Department of Agriculture ("ODA") conducted a search, pursuant to a search warrant, of appellant's business, Captive Born Reptiles, located at 1259 Morse Road in Columbus, Ohio. ODA seized 6 restricted snakes longer than 12 feet alleging a violation of R.C. Chapter 935, which requires proper permits and proper signage. An ODA agent contacted the Capital Area Humane Society, nka Columbus Humane, and Columbus Humane agents visited the Captive Born Reptiles store on December 23, 2016. Following that visit, Columbus Humane agents conducted a search of the store, pursuant to a search warrant, on January 16, 2017. Seven snakes were seized during the second search.

{¶ 4} A criminal complaint was filed February 16, 2017 charging appellant with the following: sale or auction of 6 constrictor snakes in excess of 12 feet, without required permits, a violation of R.C. 935.08; sale or auction of 6 constrictor snakes in excess of 12 feet confined without required signage on containers, a violation of R.C. 935.18(C)(3); sale or auction of 6 constrictor snakes in excess of 12 feet confined without required exterior signage, a violation of R.C. 935.18(C)(4); and the possession of an alligator without the required permit, a violation of R.C. 935.18(G). The prosecutor dismissed Count 4, relating to the possession of an alligator, prior to trial.

{¶ 5} On February 22, 2017, two more criminal complaints were filed charging appellant with cruelty to animals, specifically, "[t]ortur[ing] an animal by failing to provide necessary veterinary treatment" involving a female and a male anaconda, violations of R.C. 959.13(A)(1).

{¶ 6} On September 18, 2017, appellant filed a motion to suppress and a motion to dismiss. The trial court denied both. Following a jury trial, appellant was found guilty of all charges and sentenced to 90 days incarceration suspended, a $500 fine, and community control.

{¶ 7} Appellant filed timely appeals and assigned the following four assignments of error for our review:

> I. Mr. Wilkins was denied his right to a fair trial, and due process of law in violation of his Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution;

Article I, §§ 10 and 16, of the Ohio Constitution; and O.R.C.
§ 2901.05(A).

A. The trial court erred in allowing the State to present
evidence of other acts offenses.

B. The trial court abused its discretion when it denied Mr.
Wilkins' motion for a mistrial following a second charge to the
jury which narrowed the evidence to be considered for the
offense of cruelty to animals after permitting the prosecution
to present evidence of other acts not charged within the
criminal complaints.

C. The trial court erred in denying Mr. Wilkins' right to testify
fully on his own behalf when it refused to allow him to testify
as an expert.

II. Mr. Wilkins' convictions were legally insufficient and
against the manifest weight of the evidence.

III. Mr. Wilkins' right to due process and a fair trial were
violated through cumulative error.

IV. Trial court erred in overruling Mr. Wilkins' motion to
suppress evidence.

{¶ 8} Appellant argues in his first assignment of error he was denied his right to a
fair trial and due process of law in violation of his Fifth, Sixth, and Fourteenth Amendment
rights under the United States and Ohio Constitutions. He sets forth three arguments. We
discuss these arguments out of order for ease of analysis.

{¶ 9} Appellant argues his due process rights, including a right to a fair trial, were
violated when the trial court denied his motion for a mistrial following a second charge to
the jury. The decision whether to grant a mistrial rests in a trial court's sound discretion.
*State v. Oteng*, 10th Dist. No. 14AP-466, 2015-Ohio-1231, ¶ 26, citing *State v. Jones*, 10th
Dist. No. 12AP-1091, 2014-Ohio-674, ¶ 10; *State v. Glover*, 35 Ohio St.3d 18 (1988). A
reviewing court may not substitute its judgment for that of the trial court absent an abuse
of discretion. *Oteng* at ¶ 26, citing *State v. Bruce*, 10th Dist. No. 07AP-355, 2008-Ohio-
4370, ¶ 75. An abuse of discretion implies that the court's attitude is unreasonable,
arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

However, "no court has discretion to violate the law." *State v. Burney*, 10th Dist. No. 15AP-197, 2020-Ohio-504, ¶ 28.

{¶ 10} "This standard is based upon the notion that the trial court is in the best position to determine whether the circumstances of the case necessitate the declaration of a mistrial or whether other corrective measures are adequate." *Oteng* at ¶ 26, citing *Bruce* at ¶ 75. "A mistrial should be granted only where the party seeking it demonstrates that he or she suffered material prejudice so that a fair trial is no longer possible." *Id.*, citing *Bruce* at ¶ 75, citing *State v. Franklin*, 62 Ohio St.3d 118 (1991).

{¶ 11} The trial court initially instructed the jury, providing all the alternative methods of committing cruelty to animals, as follows:

> Mr. Wilkins is charged in the fourth criminal complaint with cruelty to animals. Before you can find Mr. Wilkins guilty, you must find beyond a reasonable doubt that on or about January 17, 2017, in Columbus, Franklin County, Ohio, Terry Wilkins did recklessly torture an animal, deprive one of necessary sustenance, unnecessarily or cruelly beat, needlessly mutilate or kill, or impound or confine an animal without supplying it during such confinement with a sufficient quantity of good wholesome food and water.

(Tr. Vol. III at 710-11.)

{¶ 12} The trial court provided the same instruction on cruelty to animals involving the male anaconda. The trial court provided a copy of the instructions to the jury. The jury began its deliberations, but subsequently, the prosecutor informed the trial court that the instructions for cruelty to animals were incorrect. Pursuant to *State v. Rawson*, 10th Dist. No. 14AP-1023, 2016-Ohio-1403, the instruction should only include "torture an animal" and the other alternative means of committing the offense in the jury instruction should be removed. Appellant objected to a curative instruction and moved for a mistrial. The trial court denied the motion and reinstructed the jury, as follows:

> Thank you. Good afternoon, ladies and gentlemen. Now, you have already begun your deliberations and, therefore, this is a rather delicate time during the trial of this case. You have been returned to the courtroom at my direction simply because I gave you certain instructions of law which are wrong with respect to the fourth and fifth criminal complaints concerning cruelty to animals, and I wish to have those instructions corrected at this time.

> You will receive a copy of these corrected instructions written out.
>
> The fourth criminal complaint, cruelty to animals, Mr. Wilkins is charged in the fourth criminal complaint with cruelty to animals. Before you can find Mr. Wilkins guilty, you must find on or about January 17, 2017, in Columbus, Franklin County, Ohio, Terry Wilkins did recklessly torture an animal.
>
> The animal for this count is an adult female anaconda.

(Tr. Vol. III at 757-58.)

{¶ 13} The trial court defined the terms and then provided the same instruction for the male anaconda. The trial court then further instructed the jury:

> Now, these are your corrected instructions with regards to those two complaints. Please give no affect [sic] to the prior instructions given to you. You're instructed to discard your prior deliberations and start again as to the fourth and fifth criminal complaints based on the new deliberations, on these corrected instructions just given to you.

(Tr. Vol. III at 760.)

{¶ 14} In *Rawson*, the defendant was charged with two violations of mistreatment of companion animals. The trial court charged the jury providing all the independent alternative means of committing the mistreatment of animals, over the defendant's objection because the instructions included alternative means that were not charged in the complaint or supported by any evidence. After the jury returned guilty verdicts, this court found the trial court erred in its jury instructions based on *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787. In *Gardner*, the Supreme Court of Ohio "adopted the rule that each possibility in an alternative means case must be supported by sufficient evidence." *Rawson* at ¶ 20, quoting *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, ¶ 290, citing *Gardner* at ¶ 49.

{¶ 15} In this case, the curative instructions given by the trial court were sufficient to correct any potential prejudice to appellant. The trial court corrected the erroneous charge by instructing the jury to disregard the incorrect instruction, by giving the jury a curative instruction and charging them to begin their deliberations anew regarding the

fourth and fifth criminal complaints. " '[A] jury is presumed to follow instructions of the court, so a limiting instruction is presumed to be followed.' " *State v. Shipley,* 10th Dist. No. 12AP-948, 2013-Ohio-4055, ¶ 62, quoting *State v. Faris*, 10th Dist. No. 93APA08-1211 (Mar. 24, 1994), citing *Lakeside v. Oregon*, 435 U.S. 333 (1978). *See also State v. Walburg*, 10th Dist. No. 10AP-1087, 2011-Ohio-4762, ¶ 53, citing *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶ 39.

{¶ 16} Further, the prosecution only addressed torture as a means of committing the crime in its closing argument. (*See* Tr. Vol. III at 659.) ("[I]n the jury instructions, there is a number of different ways we can prove those charges. One of them is by torture, and torture is not what you normally think of because everything has a legal definition. So we are not alleging that Mr. Wilkins was, you know, whipping snakes in the back of his store, but if you look at the definition for torture in the jury instructions, it's going to tell you that torture means any act or omission or neglect by which unnecessary and unjustifiable pain or suffering is caused, permitted or allowed to continue when there is a reasonable remedy or relief.") Defense counsel also focused on torture in his closing argument. During his closing argument, defense counsel pointed out the animals were given food and water and the prosecution did not "make a claim of cruelty on that basis." (Tr. Vol. III at 689.) Defense counsel told the jurors they had to "make a finding based upon the evidence, based upon the law that they proved beyond a reasonable doubt that these animals were tortured based upon reckless conduct on behalf of Mr. Wilkins." (Tr. Vol. III at 692.)

{¶ 17} The facts of this case are similar to the facts of *State v. Robinson*, 11th Dist. No. 96-L-017 (Nov. 29, 1996). In *Robinson*, the trial court gave an incorrect jury instruction regarding venue. The jury reached a verdict, but the trial court reinstructed the jury regarding venue and the jury commenced deliberations on that aspect of the case before reaching a verdict a second time. The appellate court determined the court did not err in reinstructing the jury. *See also State v. Puma*, 11th Dist. No. 1215 (Sept. 27, 1985) (The trial court gave an incorrect instruction regarding alibi defense but after the jury began its deliberations, the trial court recalled the jury and corrected its prior instruction. The appellate court found that the trial court cured its errors. "This curing process promotes judicial economy and avoids the hardships in duplicating the efforts of the parties in litigating the same factual dispute upon reversal."). The limiting instruction narrowed the

means by which the jury could find appellant guilty. By the trial court's elimination of the other means of committing the crime and limiting the means to torture, it decreased the ways for the jury to find appellant guilty. We do not find the curative instruction prejudiced appellant and the trial court did not abuse its discretion in denying appellant's motion for a mistrial.

{¶ 18} Appellant also argues his constitutional rights were violated because the trial court erred in allowing the prosecution to present "evidence of other acts offenses." (Appellant's Brief at 2.) Appellant's argument relates to the cruelty to animals charges involving two anacondas (a male and a female) and he argues the prosecution was able to add other acts evidence regarding the cleanliness of the animals cages, room temperature, quality of supplied water, lighting, heating, and the overall condition of the back of the store where the anacondas were kept. He contends that the prosecution was permitted to change the identity of the crime charged without an amendment to the complaint by providing other acts evidence of "failed conditions within the store" during the trial. (Appellant's Brief at 26.)

{¶ 19} Plaintiff-appellee, State of Ohio, contends this evidence was admitted as extrinsic evidence to the crimes charged. It is evidence of acts which, though extrinsic to the crimes charged, constitute appellant's scheme, plan, or system leading to them. *State v. Smith*, 84 Ohio App.3d 647, 658 (2d Dist.1992). Therefore, appellee argues that evidence of appellant's other acts is admissible for those limited purposes.

{¶ 20} Appellee's argument is that the testimony about the health and living conditions of the six restricted snakes was relevant to prove the length of the snakes, because appellee was required to prove the constricting snakes were 12 feet or longer. Dr. Dennis Summers testified that the lack of heat, cold temperatures, feeding schedule, humidity, and poor sanitary conditions are factors that affect a snake's immune system and make them prone to various infections and would affect a snake's overall health.

{¶ 21} Appellee further contends the evidence of the health and living conditions of the six snakes did not constitute other acts evidence and was properly admitted. Further, the condition of the animals on December 23, 2016, when Columbus Humane employees inspected appellant's store, was a partial basis for the search warrant issued in January.

Appellee finally argues that assuming the evidence constitutes other acts evidence, it was relevant and admissible under the "scheme, plan, or system" exception in R.C. 2945.59.

{¶ 22} Evid.R. 404(B) governs the admissibility of evidence of other acts, as follows:

**Other crimes, wrongs or acts**.

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

{¶ 23} The other acts evidence appellant contends was admitted in error is testimony concerning the conditions within the store and the animal cages, particularly those that were dirty. Much of the evidence was admissible to explain the sequence of events and the investigative actions that were taken. In *State v. Thompson*, 66 Ohio St.2d 496, 498 (1981), the Supreme Court stated such background evidence was admissible if the "other acts" were "inextricably related" to the crime charged and where the "challenged evidence plays an integral part of explaining the sequence of events and is necessary to give a complete picture of the alleged crime." In *State v. Wilkinson*, 64 Ohio St.2d 308, 318 (1980), the court stated other acts evidence may be admissible when proof of the charged crime incidentally involves the other acts evidence. R.C. 2945.59 codifies exceptions to the general rule that evidence of previous or subsequent criminal acts, that are independent of the offense charged, are inadmissible. *Id.* "Scheme, plan or system" evidence is relevant in situations in which the other acts evidence forms part of the immediate background of the alleged act. *Id.* at 315-16.

{¶ 24} " 'A trial court has broad discretion concerning the admission or exclusion of evidence.' " *State v. Young*, 10th Dist. No. 18AP-630, 2020-Ohio-462, ¶ 90, quoting *State v. Hogg*, 10th Dist. No. 11AP-50, 2011-Ohio-6454, ¶ 43. An appellate court will generally not second guess a trial court's determination on the admission or exclusion of evidence in the absence of an abuse of such discretion. *Id.* The listed exceptions within Evid.R. 404(B) are not exclusive, and "other acts" evidence not fitting within the enumerated categories may be admissible so long as the evidence is admitted for any proper purpose other than

proving the defendant's propensity to act in and conformity with a particular trait of his character. *State v. Rocker*, 10th Dist. No. 97APA10-1341 (Sept. 1, 1998).

{¶ 25} Here, the testimony was inextricably related to the crime charged. The condition of the store, cages, and the health of other snakes was the reason for DOA to refer the case to Columbus Humane. The conditions explained the actions taken during the searches. Dr. Albert Lewandowski, now retired but had been the chief veterinarian for the Cleveland Metroparks Zoo, testified the water temperature and the heating pad temperature led to the severe health conditions of the anacondas. The testimony was integral to the cruelty to animals charges regarding the anacondas.

{¶ 26} Furthermore, appellant contends the situation was exacerbated when the trial court reinstructed the jury. However, the second instruction to the jury limited the means by which the jury could find appellant guilty. By the trial court's elimination of the other means of committing the crime and limiting the means to torture, it decreased the ways for the jury to find appellant guilty and focused the jury's attention on the torture of the anacondas. We find the trial court did not err in admitting this evidence.

{¶ 27} Appellant's third argument is that the trial court erred in denying his right to testify fully on his own behalf when it refused to allow him to testify as an expert. The trial court permitted appellant to testify regarding his education, training, and experience. He was also permitted to testify to explain his care and treatment of the animals. However, it did not permit him to render an opinion as an expert. Appellant failed to provide an expert report and comply with Crim.R. 16(K), which provides, as follows:

> **(K) Expert witnesses; Reports.** An expert witness for either side shall prepare a written report summarizing the expert witness's testimony, findings, analysis, conclusions, or opinion, and shall include a summary of the expert's qualifications. The written report and summary of qualifications shall be subject to disclosure under this rule no later than twenty-one days prior to trial, which period may be modified by the court for good cause shown, which does not prejudice any other party. Failure to disclose the written report to opposing counsel shall preclude the expert's testimony at trial.

{¶ 28} Appellant does not deny that he failed to comply with Crim.R. 16(K) but argues he has a constitutional right to testify. A defendant does have a constitutional right

to testify or not testify, as the United States Supreme Court stated: "A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense— a right to his day in court—are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel." *In re Oliver*, 333 U.S. 257, 273 (1948). However, in exercising his right to present witnesses, a defendant "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973).

{¶ 29} The Rules of Civil Procedure allow the discovery of opinions of experts retained by the opposing party. *See* Civ.R. 26(B)(5). The purpose of this rule is "to prevent surprise when dealing with expert witnesses." *Vance v. Marion Gen. Hosp.,* 165 Ohio App.3d 615, 2006-Ohio-146, ¶ 12 (3d. Dist.), citing *Vaught v. Cleveland Clinic Found.*, 8th Dist. No. 79026 (Sept. 6, 2001). Moreover, "[a] litigant is not only entitled to know an opposing expert's opinion on a matter, but the basis for that opinion as well * * * so that opposing counsel may make adequate trial preparations." *Vaught*.

{¶ 30} In *Vaught*, the trial court excluded a defendant-physician, who at the last minute chose to act as his own expert witness in a medical malpractice action regarding the standard of care. Since the physician had not submitted a report, pursuant to Loc.R. 21.1,[1] the trial court did not permit the defendant to testify as an expert witness. The appellate court held that a party who seeks to testify as an expert witness must be identified as an expert witness prior to trial and comply with the relevant portions of Loc.R. 21.1. The local rule was similar to the Criminal Rules.

{¶ 31} In *Pecek v. Carlton*, 8th Dist. No. 47897 (Jan. 10, 1985), the trial court did permit the expert to testify despite the lack of a report, however, the trial court permitted

---

[1] Loc.R. 21.1 provided at the time:
"(B) A party may not call an expert witness to testify unless a written report has been procured from the witness and provided to opposing counsel. * * * The report of an expert must reflect his opinions as to each issue on which the expert will testify. An expert will not be permitted to testify or provide opinions on issues not raised in his report.
(C) All experts must submit reports. If a party is unable to obtain a written report from an expert, counsel for the party must demonstrate that a good faith effort was made to obtain the report and must advise the court and opposing counsel of the name and address of the expert, the subject of the expert's expertise together with his qualifications and a detailed summary of his testimony. In the event the expert witness is a treating physician, the Court shall have the discretion to determine whether the hospital and/or office records of that physician's treatment which have been produced satisfy the requirements of a written report. The Court shall have the power to exclude testimony of the expert if good cause is not demonstrated * * *."

defense counsel to depose the expert and gave defense counsel the opportunity for additional time for preparation including obtaining their own expert.  *Pecek* differs from this case because appellant sought to testify as an expert at the close of the prosecution's case and the prosecution's expert was unavailable to return during trial.

{¶ 32} In *State v. Walls*, 6th Dist. No. E-16-027, 2018-Ohio-329, the court determined Crim.R. 16(K) required the exclusion of expert testimony when the expert report was not provided unless compliance with the spirit of the rule has been achieved through other means.  (*Walls* at ¶ 35, recognizing that in *State v. Retana*, 12th Dist. No. CA2011-12-225, 2012-Ohio-5608, ¶ 49, the state did not provide the defense a "written report" from its expert, but six months before trial, it provided the defense with a transcript of the expert's testimony in a companion case, specifically articulating the expert's opinions.)

{¶ 33} Further, in *State v. Hall*, 1st Dist. No. C-170699, 2019-Ohio-2985, the appellate court found that two interrelated errors deprived the defendant of a fair trial.  The first error was that the state qualified its expert at trial without providing an expert report as mandated by Crim.R. 16(K).  That error in combination with the state's closing argument resulted in an unfair trial.  In *State v. Wolford-Lee*, 11th Dist. No. 2017-L-122, 2018-Ohio-5064, the court excluded the defendants' expert because the defendants did not provide the expert's report in advance of trial.

{¶ 34} The trial court did not exclude appellant's testimony altogether but, rather, denied qualifying appellant as an expert.  Thus, appellant was able to testify regarding his education, training, experience, and his care and treatment of the animals, but was prohibited from rendering an opinion as an expert.  We find the trial court did not err in refusing to allow appellant to testify as an expert because his constitutional rights were not denied by doing so.  Appellant's first assignment of error is overruled.

{¶ 35} In his second assignment of error, appellant contends his convictions were legally insufficient and against the manifest weight of the evidence. In considering a challenge to the sufficiency of the evidence "the test is whether after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the

offense beyond a reasonable doubt." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 36} By contrast, in addressing a manifest weight challenge, an appellate court "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Munoz*, 10th Dist. No. 11AP-475, 2011-Ohio-6672, ¶ 8. Under Ohio law, "[t]he power to reverse on manifest-weight grounds should only be used in exceptional circumstances when 'the evidence weighs heavily against the conviction.' " *State v. Phillips*, 10th Dist. No. 14AP-79, 2014-Ohio-5162, ¶ 125, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997) (superseded by statute on other grounds).

{¶ 37} "Although the legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different, '[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency.' " *State v. Goodwin*, 12th Dist. No. CA2016-05-099, 2017-Ohio-2712, ¶ 25, quoting *State v. Jones*, 12th Dist. No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶ 38} Appellant was convicted of violating R.C. 935.08(A)(1), which provides, as follows:

> A person that possesses a restricted snake in this state prior to January 1, 2014, that wishes to continue to possess the restricted snake on and after that date, and that does not intend to propagate, sell, trade, or otherwise transfer the snake shall obtain a restricted snake possession permit under this section not later than January 1, 2014.

{¶ 39} Appellant conceded that he owned six snakes that meet the threshold requirement for a permit but argues these facts fit within the requirements of R.C. 935.08(A)(2), because he argues there is a question as to when the obligation for a permit began. R.C. 935.08(A)(2) provides, as follows:

> A person that acquires a restricted snake in this state on or after January 1, 2014, and that does not intend to propagate, sell, trade, or otherwise transfer the snake shall obtain a restricted snake possession permit under this section not later than one hundred twenty days after acquiring the snake.

{¶ 40} Appellant moved the snakes from Ohio to his store in Kentucky before January 1, 2014. He returned the snakes to Ohio and his store on Morse Road in November 2016. On January 13, 2017, appellant filed an application for a permit which he argues is within the 120-day limitation period provided in R.C. 935.08(A)(2).[2]

{¶ 41} The prosecution argues R.C. 935.08(A)(1) applies to any person who possessed a restricted snake in Ohio before January 1, 2014 and does not obtain a permit before January 1, 2014. The prosecution argues the statute does not require possession of a restricted snake in the state of Ohio on January 1, 2014 but requires possession of a restricted snake in the state of Ohio at some time before January 1, 2014. R.C. 935.08(A)(2), which gives 120 days after acquisition to obtain a permit applies when a person acquires a restricted snake after January 1, 2014. Appellant moved the snakes to Ohio after January 1, 2014 but did not acquire them after that date because, according to the prosecution, he testified he owned them and possessed them in Ohio prior to that date.

{¶ 42} Appellant testified he moved the snakes to his store in Kentucky in late 2013. Appellant did possess the snakes in Ohio prior to January 1, 2014. However, he no longer possessed the restricted snakes in the state of Ohio after removing them. The statute does not require a permit for restricted snakes that are no longer in Ohio.

{¶ 43} "Acquire" is not defined in R.C. 935.08. However, according to Merriam-Webster, the definition of "acquire" is "to get as one's own" or "to come into possession or control of often by unspecified means." *Merriam-Webster Online Dictionary*, https://merriam-webster.com/dictionary/acquire. Appellant acquired the restricted snakes in *Ohio* in November 2016 when he moved the snakes to Ohio. Thus, the 120-day application period was applicable, and appellant filed an application for a permit within that time period. The evidence is not sufficient to support appellant's conviction for a violation of R.C. 935.08(A)(1).

{¶ 44} Appellant also contends the prosecution failed to prove recklessness as required for the offense of cruelty to animals. R.C. 959.13(A) provides:

> No person shall:
>
> (1) Torture an animal, deprive one of necessary sustenance, unnecessarily or cruelly beat, needlessly mutilate or kill, or

---

[2]Appellant testified that ODA denied the permit.

> impound or confine an animal without supplying it during such confinement with a sufficient quantity of good wholesome food and water.

{¶ 45} Appellant argues the jury could find at most he was merely negligent and not reckless and, therefore, he cannot be convicted of cruelty to animals. Appellant contends there was a valid difference of opinion and competing testimony regarding the care of the anaconda snakes. He argues this difference in professional opinions as to the breeding and care of the anacondas cannot rise to the level of negligence, and certainly not reckless behavior.

{¶ 46} "Recklessness is sufficient mens rea to sustain a conviction pursuant to R.C. 959.13(A)(1)." *State v. Hoffman*, 10th Dist. No. 07AP-886, 2008-Ohio-6602, ¶ 10, citing *State v. Bergmen*, 121 Ohio App.3d 459 (1st Dist.1997); *State v. Lapping*, 75 Ohio App.3d 354 (11th Dist.1991). R.C. 2901.22(C) defines "recklessly" as follows:

> A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the persons conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

{¶ 47} The prosecution presented the testimony of Dr. Lewandowski. Dr. Lewandowski participated in the search of Captive Born Reptiles on January 17, 2017. He stated the way the enclosure for the anacondas was set up did not constitute a safe environment. He stated the enclosure was "a modified bathtub with a platform within the cage. It was plywood and it covered the entire tub. The platform for the snakes to haul out was incorporated in that and there was what we call a hog mat, which is a heating unit that was on the resting area in the enclosure." (Tr. Vol. I at 207.) Exhibit 44 was a set of two pictures of the thermal imaging and one shows the temperature recorder of the heat mat as 139 degrees and the other reflects 71.3 degrees for the water. Dr. Lewandowski did not believe those temperatures for the water and the heating mat were appropriate for the anacondas because tropical snakes typically prefer temperatures ranging from approximately 80 degrees to 90-95 degrees Fahrenheit. "They require the higher body temperatures because the enzymes that are responsible for them digesting food and for

maintaining body condition and providing energy for them to move, they require the higher body temperature in order for their bodies to function well.  The 70 degree water is cold.  Okay.  And the heat mat that was almost 140 degrees is sufficiently warm that if you maintain contact with that for any extended period of time, you would end up burning yourself on that.  So the snake had a choice of either staying in the 70 degree water or climbing up on to a heat mat and burning their hide off."  (Tr. Vol. I at 212-13.)  Dr. Lewandowski testified the temperature of a heating mat should not exceed 100 degrees.

{¶ 48} Dr. Lewandowski examined the anacondas during the search and observed "[b]oth snakes showed severe blistering and a reddening of the skin underneath with blood blisters on their bellies.  When the investigator was holding the snake for me to examine, the snakes were obviously very uncomfortable with any pressure on their bellies and they kept twisting and turning and the skin was so delicate that it - - even trying to just hold them to look at them, the skin was peeling off and the blisters on their bellies were breaking and they were spraying serum on the handler.  As the skin peeled away, there was raw tissue underneath just from the simple act of picking that snake up and trying to do an examination on it.  And it extended virtually from their head down to - - almost to the end of their tail.  The entire underside of their bellies was just - - it was essentially sloughing off.  The extensive exposure to water and water that was cold and dirty set up a really nasty infection on both of those snakes."  (Tr. Vol. I at 214-15.)  Dr. Lewandowski testified he believed, based on a reasonable degree of veterinary and medical certainty, that the injuries to the anacondas were caused by their environment.  He believed it would take weeks to months for the snakes' condition to deteriorate so badly.  He performed a culture of the bacteria that caused the condition and then prescribed antibiotics and topical treatments and it took several months for the snakes to heal.

{¶ 49} Appellant testified the condition of the anacondas was not due to their environment of the enclosure but, rather, was due to the natural shedding process of the snakes and that the agents mishandled the snakes causing injury.  He stated the female was in a state of shedding and one should not handle a snake in that condition.  He could tell from the pictures that the agents aggressively handled the snakes and he would never handle a snake in that manner when the snake is getting ready to shed.  Further, appellant testified the temperature of the enclosure and the use of the heating mat was consistent

with his practice and acceptable methods of cool breeding. Cool breeding is the process of maintaining a reduced temperature to facilitate the breeding of reptiles.

{¶ 50} As stated above, the prosecution was required to prove appellant acted recklessly in his care of the anacondas. A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. Thus, the prosecution was required to show appellant acted with " 'heedless indifference to the consequences' or perversely disregarded a known risk that his conduct was likely to cause a certain result or to be of a certain nature." *State v. Centers*, 12th Dist. No. CA92-12-107 (Aug. 23, 1993), quoting R.C. 2901.22(C). "Excessive heat or sunlight is a legitimate factor to consider in determining whether a person was reckless in confining an animal under the circumstances." *State v. Paul*, 5th Dist. No. 16-COA-036, 2017-Ohio-4054, ¶ 20.

{¶ 51} In *State v. Shine-Johnson*, 10th Dist. No. 17AP-194, 2018-Ohio-3347, ¶ 65, this court stated: " 'A defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial. The trier of fact is free to believe or disbelieve all or any of the testimony.' (Citation omitted.); *State v. Williams*, 10th Dist. No. 08AP-719, 2009-Ohio-3237, ¶ 16. *See also State v. Banks*, 10th Dist. No. 09AP-13, 2009-Ohio-4383, ¶ 15 (concluding that the factfinder is free to resolve or discount alleged inconsistencies)." In *State v. Lindsey*, 10th Dist. No. 14AP-751, 2015-Ohio-2169, ¶ 43, this court found "a conviction is not against the manifest weight of the evidence because the trier of fact believed the state's version of events over the defendant's version." (Citation omitted.)

{¶ 52} After reviewing this evidence and the inferences reasonably drawn therefrom in the light most favorable to the prosecution, a rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt and we cannot say the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered in regards to the cruelty to animals charges. Appellant's second assignment of error is sustained in part and overruled in part.

{¶ 53} In his third assignment of error, appellant contends his right to due process and a fair trial were violated through cumulative error. The cumulative error doctrine

provides that "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial error does not individually constitute cause for reversal." *State v. Garner*, 74 Ohio St.3d 49, 64 (1995). The doctrine is not applicable where the defendant fails to establish multiple instances of harmless error during the trial. *Id.*

{¶ 54} In the instant case, appellant has failed to establish multiple instances of harmless error. We have only found that the trial court erred in relation to part of assignment of error two regarding the restricted snake permit. Therefore, the doctrine of cumulative error is not applicable. Thus, appellant's third assignment of error is overruled.

{¶ 55} In his fourth assignment of error, appellant contends the trial court erred in denying his motion to suppress evidence. On September 18, 2017, appellant filed a motion to suppress evidence and a motion to dismiss. Appellant argued there was no probable cause to issue the search warrants, the searches were not subject to a good-faith exception, the warrants were based on a false statement or materially reckless omission of critical facts, the warrants were impermissibly broad, and the issuing judge failed to make an independent evaluation regarding probable cause. The trial court held a hearing on November 21 and December 18, 2017 and denied appellant's motions. On appeal, appellant makes the same five arguments as he did to the trial court, although his argument as to one of the arguments is applied to the facts differently.

{¶ 56} "In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a [judge], neither a trial court nor an appellate court should substitute its judgment for that of the [judge] by conducting a *de novo* determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant." *State v. George*, 45 Ohio St.3d 325 (1989), paragraph two of the syllabus. When making this determination, appellate courts should give great deference to the judge's determination of probable cause. *Id.* Doubtful or marginal cases should be resolved in favor of upholding the warrant. *Id.*

{¶ 57} The affidavit for the first search was provided by Agent David Hunt from ODA. He testified at the motion hearing that on November 4, 2016, the enforcement division of ODA received a complaint referral from ODA Dangerous Wild Animal program that a childcare center in Dublin, Ohio had posted several photographs on the center's

website that showed children holding an alligator. Agent Hunt met with the director of the childcare center and was informed the photographs were taken prior to 2011. Agent Hunt noted the pictures were taken prior to 2011 in his affidavit. However, the childcare center director told Agent Hunt that appellant had been visiting the facility "once a year for several years" to display an alligator and reptiles to the children. (Emphasis omitted.) (Deft.'s Ex. A to Nov. 21, 2017 Hearing Tr., Hunt Aff.) The childcare center director informed Agent Hunt that appellant's most recent visit occurred on June 15, 2016.

{¶ 58} Agent Hunt further provided that ODA had received an earlier complaint in July 2016 of appellant supplying an alligator for a business display booth at the Columbus Convention Center. Two photographs of adult women holding the alligator were included with the complaint. Agent Hunt provided that in October 2015, WLWT News in Newport, Kentucky reported that Newport Officers rescued appellant after he was attacked by a 20-foot python while cleaning its cage. On December 1, 2016, Agent Hunt traveled to appellant's store in Newport, Kentucky but did not find the 20-foot python or the alligator. Appellant had a prior charge for keeping a dangerous animal from the Pickerington Ohio Police Department on October 26, 1990. Agent Hunt informed the judge that appellant did not possess a dangerous wild animal or restricted snake permit from ODA.

{¶ 59} With that information, on December 13, 2016, Agent Hunt petitioned the Franklin County Municipal Court for a search warrant, supported by his affidavit. Agent Hunt believed, based on years of continuing conduct (appellant had been visiting the childcare center for several years) and the fact that the alligator was not found in Newport, Kentucky, that the alligator and the 20-foot python were either located at appellant's store on Morse Road or appellant's residence. The judge signed the warrant and the warrant was executed December 14, 2016.

{¶ 60} A second search warrant was requested by Columbus Humane by Humane Agent Elysse Rathbone. Agent Rathbone submitted the warrant request and an affidavit based on information received from Agent Hunt after the ODA search warrant was served. Agent Hunt reported several snakes were in poor health but not seized because they were not authorized by the first warrant. Agent Rathbone conducted a site visit of the store in December 2016. The judge signed the petition and the search was executed January 17, 2017.

{¶ 61} The trial court found both warrants were supported by probable cause. Appellant argues that none of the events cited in Agent Hunt's affidavit gave cause to believe contraband would be found at appellant's store because the events cited were not recent. However, Agent Hunt specifically testified that "[b]ased upon the totality of everything that I've articulated and the photographs that I obtained; the time period provided by * * * Daycare started before 2011; with the actual photographs up to June 2016, which was corroborated via subpoena; and the obtaining of those photographs - - so with the statute taking effect January 1st of 2014, as part of that continuing operation from 2011 to December 2016, that was the basis of my thought into the affidavit." (Nov. 21, 2017 Tr. at 29.) Agent Hunt investigated whether appellant had any dangerous wild animal permits or restricted snake permits and he did not possess any permits in 2016, even though the law took effect January 1, 2014. Based on Agent Hunt's investigation of the incidents he cited, he believed appellant was violating the law by having an alligator or restricted snake at his store in 2016. The facts in the affidavit were sufficient for a judge to believe that the animals would be located at appellant's store.

{¶ 62} The second search warrant affidavit was partially based on information regarding the health of the snakes that DOA agents relayed to Columbus Humane agents. The facts in the affidavit were sufficient for a judge to believe the animals were at risk and appellant was violating R.C. 959.13.

{¶ 63} " 'To successfully attack the veracity of a facially sufficient search warrant affidavit, a defendant must show by a preponderance of the evidence that the affiant made a false statement, either "intentionally, or with reckless disregard for the truth." ' " *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, ¶ 31, quoting *State v. Waddy*, 63 Ohio St.3d 424, 441 (1992), superseded by constitutional amendment, *State v. Smith*, 80 Ohio St.3d 89 (1997), quoting *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). " 'Reckless disregard' means that the affiant had serious doubts about the truth of an allegation." *McKnight* citing *United States v. Williams*, 737 F.2d 594, 602 (7th Cir.1984). An omission counts as a false statement if "designed to mislead, or * * * made in reckless disregard of whether they would mislead, the magistrate." (Emphasis omitted.) *Id.*, citing *United States v. Colkley,* 899 F.2d 297, 301 (4th Cir.1999).

{¶ 64} Appellant also argues the first search warrant contained inaccurate, incomplete, or misleading statements because Agent Hunt failed to advise the judge that R.C. 935.08 provides a 120-day period for an owner to obtain a permit after acquiring a restricted snake (there is no 120-day period to obtain a permit regarding a dangerous wild animal) or that any of the photographs presented with the affidavit could depict legal activity if appellant obtained the proper permit. However, a trial judge is presumed to know the applicable law and to apply it accordingly. *State v. Ndiaye*, 10th Dist. No. 19AP-10, 2020-Ohio-1008, ¶ 31, citing *State v. Dear*, 10th Dist. No. 14AP-298, 2014-Ohio-5104, ¶ 11. Moreover, Agent Hunt provided information in his affidavit that he believed appellant's behavior was outside the 120-day window.

{¶ 65} Appellant alleges several instances of Agent Hunt misleading the judge such as Agent Hunt referencing the 20-foot python in Kentucky but the requirement for a permit is Ohio law. However, Agent Hunt stated the python had been located in Kentucky, but when he visited the store in Kentucky on December 1, 2016, the python was not located there. That was the basis for Agent Hunt believing the python was located in Ohio.

{¶ 66} Additionally, appellant alleges Agent Hunt suggested appellant denied them access to the property. Agent Hunt cited the laws related to access to the property but did not state he was denied access to the property. A citation to law in the warrant does not make implications regarding the facts. Finally, appellant contends Agent Hunt misled the judge when he referenced a charge against appellant for keeping a dangerous animal in 1990 but not explaining to the judge that appellant was not convicted. Agent Hunt testified he traveled to the clerk of court's office in order to obtain information, but the clerk was unable to locate that information, so he did not know the outcome of the charges.

{¶ 67} None of the instances appellant cites as false or misleading demonstrate by a preponderance of the evidence that Agent Hunt made an intentionally false statement or a statement with reckless disregard for the truth.

{¶ 68} Appellant also argues that the unlawful search and seizure may not be justified by the good-faith exception rule. However, since we have found the search warrants were valid and based on sufficient probable cause, the issue of whether the agents acted in good faith is moot.

{¶ 69} Finally, appellant argues the warrants were impermissibly broad because they allowed the seizure of all animals regardless of their condition. Appellant quotes the following language from the second warrant as problematic:

> Evidence of the crimes of Cruelty to Animals, O.R.C. 959.13 and Animals, Columbus City Code 2327, O.R.C. 2933.31, and Criminal Rule 41; specifically, reptiles, or any other animals living, deceased or unborn; records of care and ownership of such animals, records of sales or other transactions, medications, and photographs and video taken on scene; and all indicia, documents and records showing ownership or rights of possession of the business of Terry Wilkins dba Captive Born Reptiles, 1259 Morse Road, Columbus, Ohio 43229.

(Deft.'s Ex. B to Nov. 21, 2017 Hearing Tr.)

{¶ 70} On appeal, appellant argues the warrants were impermissibly broad because they allowed the seizure of all animals regardless of their condition. Although appellant's argument mentions both search warrants, he only addresses the language contained in the second search warrant. The language in the first search warrant provides, as follows: "[S]earch for the following goods, chattels or articles, to wit: evidence of violation of R.C. 935.01; all documentation relating to the purchase, acquisition, sales, trade, or transfer of ownership for the same. Nothing in this warrant shall limit your authority to order the quarantine and/or transfer of any such animals under R.C. 935.20(A)." (Deft.'s Ex. A to Nov. 21, 2017 Hearing Tr.)

{¶ 71} Appellant only argued the first search warrant was overbroad to the trial court. The trial court found the first search warrant was not overly broad because the language used limited the search for "evidence of a violation of R.C. Chapter 935, and the rules enacted thereunder, including specifically any and all animals defined as dangerous wild animals and/or restricted snakes pursuant to R.C. 935.01." (Deft.'s Ex. A to Nov. 21, 2017 Hearing Tr.) Since appellant did not make this argument regarding the second search warrant to the trial court, he has waived that argument.

{¶ 72} Generally, an appellate court will not consider any error which could have been raised in the trial court but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. *State v. Childs*, 14 Ohio St.2d 56 (1968), paragraph three of the syllabus. However, an appellate court has discretion

to recognize "[p]lain errors or defects affecting substantial rights" although they were not raised to the trial court.  Crim.R. 52(B).  "To prevail under this standard, the defendant must establish that an error occurred, it was obvious, and it affected his or her substantial rights." *State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, ¶ 64, citing Crim.R. 52(B) and *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002) ("[A]n error affects substantial rights only if it 'affected the outcome of the trial.' ").  An appellate court takes "[n]otice of plain error * * * with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶ 73}  In this case, plain error does not exist because the second search warrant was not overbroad.  The language in the search warrant limited the search to evidence of the crimes of cruelty to animals, R.C. 959.13, specifically, reptiles, or any other animals living, deceased or unborn.  It did not authorize the seizure of any animal regardless of its condition as appellant asserts.  The search warrant was limited to evidence of the crime of cruelty to animals.  Thus, the trial court did not err in denying appellant's motion to suppress evidence and appellant's fourth assignment of error is overruled.

{¶ 74}  For the foregoing reasons, appellant's second assignment of error is sustained in part and overruled in part; his first, third, and fourth assignments of error are overruled, the judgments of the Franklin County Municipal Court are affirmed in part and reversed in part, and these matters are remanded to that court for further proceedings in accordance with law, consistent with this decision.

*Judgments affirmed in part*
*and reversed in part; causes remanded.*

LUPER SCHUSTER and BRUNNER, JJ., concur.

_____