[Cite as *State v. Jones*, 2016-Ohio-4766.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 15AP-596 |
| v. | : | (C.P.C. No. 13CR-6230) |
| Obryan D. Jones, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

---

## D E C I S I O N

### Rendered on June 30, 2016

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Barbara J. Farnbacher*, for appellee. **Argued:** *Barbara J. Farnbacher*.

**On brief:** *Todd W. Barstow*, for appellant **Argued:** *Todd W. Barstow*.

---

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Defendant-appellant, Obryan D. Jones, appeals from a judgment of conviction entered by the Franklin County Court of Common Pleas. For the following reasons, we affirm that judgment.

### I. Factual and Procedural Background

{¶ 2} On November 22, 2013, a Franklin County Grand Jury indicted appellant and two others with multiple counts of kidnapping in violation of R.C. 2905.01, aggravated robbery in violation of R.C. 2911.01, felonious assault in violation of R.C.

2903.11, kidnapping in violation of R.C. 2905.01, and rape in violation of R.C. 2907.02.[1] The charges arose from a horrific series of events that occurred inside appellant's house on July 15, 2013. On that day, Jerry Tipton, Amber Pascol, and Jasan Harman were forced into appellant's house, where Tipton and Harman were beaten and Pascol was raped.

{¶ 3} Appellant entered a not guilty plea to the charges. At his arraignment, the trial court appointed George Leach to represent appellant. At appellant's request, Leach sought leave to withdraw as counsel in March and December 2014. The trial court permitted Leach to withdraw on December 15, 2014 and, the next day, the trial court appointed Paul Scott to represent appellant.

{¶ 4} By April 2015, appellant had again become dissatisfied with his legal representation and filed a request to terminate Scott's representation. Simultaneously, he filed a "Notice of Waiver of Counsel Pursuant to R.44" in which he wrote that he "does voluntarily [with] full knowledge, understanding and intelligence waive his right to counsel." On April 20, 2015, the trial court held a hearing on appellant's request to represent himself. The trial court advised him of the perils involved in representing himself at trial. Appellant indicated that he understood. The trial court advised appellant of the charges he faced as well as the possible penalties he faced. Appellant told the trial court that he understood the risks and that he still wanted to represent himself. (Tr. Vol. 1 at 39-49.) Appellant did ask for Scott to be his standby counsel at trial. The trial court concluded that appellant understood what he was doing and, therefore, granted appellant's request to represent himself at trial. (*Id.* at 53.) However, appellant asked the trial court if he later changed his mind and wanted Scott to represent him, could Scott represent him at trial? The trial court told appellant that it would give him a little more time to decide whether he wanted Scott to represent him at trial. Therefore, the trial court scheduled another hearing a week later. At that second hearing on April 27, 2015, appellant indicated that he still wanted to represent himself. (Tr. Vol. 2 at 60.) Appellant also requested a continuance of the trial date. The trial court denied his request for a continuance but permitted appellant to represent himself. Ultimately, appellant represented himself at trial, with Scott acting as stand-by counsel.

---

[1] The counts all included firearm specifications as well.

{¶ 5}   All three of the victims testified at trial.  None of the victims initially went to the police to report what had occurred in the house.  However, a short time after the alleged attacks, the police initiated an investigation to determine if appellant was selling bath salts.  During that investigation, police questioned Tipton.  He still had visible bruises on his face and a swollen eye.  Tipton ultimately told the police about the events that occurred inside the house.  As a result of that conversation, police also questioned Pascol, who also eventually told the police what had occurred inside the house.

{¶ 6}   Tipton testified that he went to appellant's house to buy bath salts from appellant.  Appellant sold bath salts out of his house and all three victims were his customers.  (Tr. Vol. 5 at 654-56.)  Pascol was already at the house.  Once there, appellant told them that someone had stolen his phone, which allegedly contained the name and contact information for his customers.  Pascol told him that she thought her cousin was there the night before and had taken it, so Tipton and Pascol went to find her cousin to get the phone back for appellant.  On their way to get the phone, they stopped at Harman's house.  Harman apparently knew that the cousin's boyfriend had the phone.  Harman gave the boyfriend some bath salts in exchange for the phone.  They then called appellant to tell him they had the phone and that they wanted more bath salts in exchange for returning the phone.  They then drove back to appellant's house and when they got out of the car, several men approached them with guns and told them to go inside the house.  *Id.* at 295.

{¶ 7}   Once inside, appellant questioned them about the phone and who they were working for.  *Id.* at 413.  Appellant and the other men then forced the three into the basement, where they were tied up, blindfolded, and forced to lay down on the ground.  Throughout the ordeal, Tipton and Harman were physically beaten by the men.  One hit Harman with a baseball bat.  A circular saw was placed close to Tipton's and Harman's face to threaten them and to get them to answer questions.  Appellant threatened to pull out Harman's teeth with a set of pliers.  Appellant then brutally beat Harman.  Pascol was in another room but could hear Tipton and Harman being beaten and screaming in pain.  One man came into that room and took Pascol into another room.  He held a knife to her and forced her to perform oral sex on another man.  *Id.* at 522.

{¶ 8} Appellant and several other men continued to question Tipton and Harman about the stolen phone. They wanted to know the identity of the person who sought appellant's customer information. *Id.* at 317. After someone fired a gun between the two men, Tipton began to disclose how they got the phone back. Ultimately, Tipton was untied and his blindfold was removed. Tipton was told to go to Harman's house and get all of his bath salts and guns and to bring those items back to the house. Appellant's brother took Tipton to Harman's house. When Tipton left, Harman was still tied up and laying on the ground and Pascol was being held in another room. Tipton returned to appellant's house with the bath salts and a gun he had retrieved from Harman's house. *Id.* at 327. Upon his return, Tipton, Harman, and Pascol were released.

{¶ 9} Appellant's girlfriend at the time, Belynda Coffman, testified for the state against appellant. She was originally charged as a co-defendant in this case but ultimately entered a guilty plea to three counts of abduction in exchange for her testimony against the men involved in these events. (Tr. Vol. 5 at 708.) She was inside appellant's house during these events and her testimony was largely consistent with that of the victims. She identified appellant as the man in charge of the events that occurred in the house and also as one of the men who beat Tipton and Harman. *Id.* at 657-58, 687.

{¶ 10} The jury found appellant guilty of all counts and specifications. The trial court sentenced him accordingly.

## II. Appellant's Appeal

{¶ 11} Appellant appeals his convictions and assigns the following errors:

> [1]. The trial court erred and deprived appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article One Section Ten of the Ohio Constitution by finding him guilty of rape, kidnapping, aggravated robbery and felonious assault as those verdicts were not supported by sufficient evidence and were also against the manifest weight of the evidence.

> [2]. The trial court abused its discretion and erred to the prejudice of appellant by denying his request for a continuance of his jury trial.

> [3]. The trial court erred to the prejudice of appellant and abused its discretion by not holding a hearing on appellant's

pretrial request for a competency evaluation pursuant to Revised Code Section 2945.37.

{¶ 12}  For clarity, we will address the assignments of error out of order.

### A.  Appellant's Second Assignment of Error–The Trial Court's Denial of his Motion to Continue

{¶ 13}  Appellant argues in his second assignment of error that the trial court abused its discretion by denying his motion to continue his trial.  We disagree.

{¶ 14}  At the April 27, 2015 hearing to determine whether appellant still wanted to represent himself, appellant orally requested a continuance of his trial that was scheduled for May 11, 2015.  He argued that he needed more time to listen to or watch DVDs of witness interviews that he allegedly had not previously seen to prepare for his trial.  Scott indicated to the trial court that he and appellant had previously reviewed all the DVD interviews except for one, which Scott had just received.  Scott also indicated that he recently gave appellant's mother recordings of appellant's phone calls from jail.  *Id.* at 67.  The trial court denied appellant's request for a continuance, advising him that he could listen to the witness interviews and prepare for trial in the two weeks remaining before trial.  On May 7, 2015, appellant filed a written motion for continuance, again seeking more time to review discovery such as the DVDs.  The trial court denied that motion on the morning of trial.

{¶ 15}  The grant or denial of a continuance is a matter that is entrusted to the sound discretion of the trial court.  *State v. Presar*, 10th Dist. No. 09AP-122, 2009-Ohio-5127, ¶ 7, citing *State v. Unger*, 67 Ohio St.2d 65 (1981), syllabus.  An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion.  *Id.* at 67.  Although an abuse of discretion is typically defined as an unreasonable, arbitrary, or unconscionable decision, no court has the authority, within its discretion, to commit an error of law.  *State v. Moncrief*, 10th Dist. No. 13AP-391, 2013-Ohio-4571, ¶ 7.  Whether a trial court has abused its discretion in denying a continuance depends upon the circumstances of each case, including the length of the requested delay, prior continuances requested and received, the presence or absence of legitimate reasons for the requested delay, appellant's participation or contribution to the circumstances giving

rise to the request for a continuance, and any other relevant factors. *Unger* at 67-68; *State v. Jordan*, 10th Dist. No. 11AP-691, 2012-Ohio-1760, ¶ 9.

{¶ 16} Applying these factors, we conclude that the trial court did not abuse its discretion by denying appellant's request for a continuance. This was not appellant's first request for a continuance of his trial date. Two trial dates in October 2014 were continued for appellant to obtain different representation. His trial was again continued in December 2014 and January 2015 after new counsel was appointed. Yet again, on March 23, 2015, appellant asked for another continuance, through his then-appointed counsel, to review discovery responses recently obtained from the state. The trial court granted that request and continued the trial until May 11, 2015. In requesting yet another continuance several weeks before trial, appellant alleged he needed more time to review the witness interviews. However, Scott indicated that he and appellant had already reviewed most of the DVDs. (Tr. Vol. 2 at 67.) The remaining DVDs, as well as recorded jail phone calls, had just been received by appellant. Scott offered to review them with appellant before the trial date. Appellant fails to identify any prejudice resulting from the trial court's denial of his motion for continuance. *State v. Brooks*, 44 Ohio St.3d 185, 195 (1989) (denial of motion to continue was not an abuse of discretion where defendant failed to demonstrate how he was prejudiced by denial); *State v. Harris*, 6th Dist. No. WM-09-015, 2010-Ohio-3526, ¶ 18 (no demonstration of prejudice); *State v. Stange*, 10th Dist. No. 03AP-519, 2004-Ohio-1300, ¶ 19 (considering absence of prejudice in affirming decision to deny continuance). In fact, appellant appeared well prepared at trial to question the witnesses and to present evidence on his own behalf.

{¶ 17} The trial court did not abuse its discretion when it denied appellant's motion for a continuance. Accordingly, we overrule appellant's second assignment of error.

### B. Appellant's Third Assignment of Error—Did Appellant Request a Competency Evaluation?

{¶ 18} In his third assignment of error, appellant contends that he made a request for a competency evaluation pursuant to R.C. 2945.37 and that the trial court erred by refusing to grant him a hearing on his request. We disagree.

{¶ 19} On the morning of his scheduled trial date, appellant appeared before the trial court, who proceeded to address the numerous pre-trial motions that had been filed. After resolving those motions, the trial court started to call the potential jurors to the courtroom to begin voir dire. At that point, appellant told the trial court that he no longer wished to represent himself. (Tr. Vol. 1 at 93.) The trial court told him that it was too late to change his mind and reminded appellant that he had been before the court two weeks ago and reiterated that he wanted to represent himself. Appellant told the trial court that he did not want to represent himself because he was not prepared. *Id.* at 93-98. The trial court again indicated it would not continue the trial date. Appellant then asked the trial court for "a competency evaluation pursuant to R.C. 2954.71. I don't feel like I'm competent to stand trial. I don't understand anything what's going on." *Id.* at 99.[2] The trial court again told appellant that it was too late to change his mind and proceeded with the trial. Appellant continued: "I don't understand anything that's going on. I have no idea. I don't feel like I'm competent to stand trial whatsoever. I don't understand the charges. I don't understand the procedure. I don't understand anything." *Id.* The trial court proceeded with the trial and called the potential jurors into the courtroom.

{¶ 20} After a lunch break, the prosecutor pointed out to the trial court that in the almost two years that appellant's case had been pending, no one had ever suggested that appellant was not competent to stand trial. Appellant replied that "I don't want to proceed pro se. I'm incompetent to do this. I don't have any prior criminal record. I never been through a trial before. The only reason why I chose to be pro se was because me and Mr. Scott was having communication issues." *Id.* at 105. The trial court again told appellant that the trial would proceed and that it would not permit appellant "to play these kind of games." *Id.*

{¶ 21} R.C. 2945.37(B) provides that if the issue of a defendant's competency to stand trial is raised before trial, the court shall hold a hearing on the issue. *State v. Bock*, 28 Ohio St.3d 108, 109 (1986) (noting the mandatory nature of a hearing if the issue is raised). Appellant's comments, however, when read in context, do not raise the issue of his competency to stand trial. Instead, appellant's comments indicate that he felt as if he

---

[2] R.C. 2954.71 does not exist.

was not competent to represent himself and did not want to do so anymore. Thus, the trial court did not err when it failed to hold a competency hearing.

{¶ 22} Even if we were to interpret appellant's comments as a request for a competency hearing, the failure to hold a competency hearing is harmless error when the record fails to reveal sufficient indicia of incompetence. *Id.* at 110; *State v. Almashni*, 8th Dist. No. 92237, 2010-Ohio-898, ¶ 13-14; *State v. Austin*, 7th Dist. No. 09 MA 167, 2010-Ohio-6583, ¶ 36. Here, there is nothing in the record that indicates appellant might be incompetent to stand trial. First, counsel who represented appellant for almost two years never raised the issue of appellant's competency to stand trial. Second, appellant filed many motions on his own before trial that were well articulated and coherent. These motions do not reveal any indicia of incompetence. Moreover, appellant's conduct representing himself during the trial did not reveal any indications of incompetency to stand trial. Appellant questioned all of the witnesses presented by the state and presented witnesses on his own behalf. His behavior before and during the multi-day trial does not reflect any indicia of incompetence. *Bock* at 111 (considering behavior during trial to determine whether indicia of incompetency warranted a hearing); *State v. Murphy*, 173 Ohio App.3d 221, 2007-Ohio-4535, ¶ 35-36 (12th Dist.) (same). Accordingly, even if we were to interpret appellant's remarks as challenging his competency to stand trial, any error in not holding a hearing on that issue would be harmless.

{¶ 23} For these reasons, we overrule appellant's third assignment of error.

## C. Appellant's First Assignment of Error–The Sufficiency and Manifest Weight of the Evidence

{¶ 24} In this assignment of error, appellant contends that his convictions are not supported by sufficient evidence and are also against the manifest weight of the evidence. Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. *State v. McCrary*, 10th Dist. No. 10AP-881, 2011-Ohio-3161, ¶ 11, citing *State v. Braxton*, 10th Dist. No. 04AP-725, 2005-Ohio-2198, ¶ 15. "[T]hus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." *Id.* In that regard, we first examine whether appellant's convictions

are supported by the manifest weight of the evidence. *State v. Gravely*, 188 Ohio App.3d 825, 2010-Ohio-3379, ¶ 46 (10th Dist.).

{¶ 25} The weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). When presented with a challenge to the manifest weight of the evidence, an appellate court may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* at 387. An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983); *State v. Strider-Williams*, 10th Dist. No. 10AP-334, 2010-Ohio-6179, ¶ 12.

{¶ 26} In addressing a manifest weight of the evidence argument, we are able to consider the credibility of the witnesses. *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6. However, in conducting our review, we are guided by the presumption that the jury, or the trial court in a bench trial, " 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Id.*, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Accordingly, we afford great deference to the jury's determination of witness credibility. *State v. Redman*, 10th Dist. No. 10AP-654, 2011-Ohio-1894, ¶ 26, citing *State v. Jennings*, 10th Dist. No. 09AP-70, 2009-Ohio-6840, ¶ 55. *See also State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus (credibility determinations are primarily for the trier of fact).

{¶ 27} Appellant argues that his convictions are against the manifest weight of the evidence because the victims were drug users who were under the influence of drugs at the time of the offenses and who told differing versions of the events and lied to the police when initially confronted. Appellant also notes that Pascol continued to buy drugs from him and to live in his house after these events and still maintained a relationship with the

men who she claimed helped appellant assault and rape her. Lastly, appellant points out that Coffman testified against him after entering into an agreement with the state, for which she received a reduced sentence.[3] In essence, appellant argues that the jury should not have found any of the witnesses' testimony credible. We disagree.

{¶ 28} The jury was aware of all these points. Each victim testified about their drug use and why they did not originally tell the police about what had occurred. Tipton testified that these events caused him to be terrified of appellant and, as a result, he still bought bath salts from him because he did not want appellant to think that he was crossing him by using another drug dealer. (Tr. Vol. 4 at at 356.) Pascol testified that she had a relationship with one of the men involved because he continued to provide her with drugs. *Id.* at 575. She also brought appellant customers after these events in exchange for more bath salts. *Id.* at 586. Coffman testified about the plea agreement she entered into with the state. *Id.* at 706-07. The jury heard all of these points and was in the best position to weigh and determine these witnesses' credibility and was entitled to believe or disbelieve the testimony. *State v. Green*, 10th Dist. No. 11AP-526, 2012-Ohio-950, ¶ 11. There is nothing in these witnesses' testimony that would make it so incredible as to render appellant's convictions against the manifest weight of the evidence. *State v. Thompson*, 10th Dist. No. 07AP-491, 2008-Ohio-2017, ¶ 35.

{¶ 29} Additionally, while there may be some slight inconsistencies in the victims' testimony, a defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was offered at trial. *State v. Campbell*, 10th Dist. No. 07AP-1001, 2008-Ohio-4831, ¶ 23. The trier of fact is in the best position to take into account the inconsistencies in the evidence, as well as the demeanor and manner of the witnesses, and to determine which witnesses are more credible. *State v. DeJoy*, 10th Dist. No. 10AP-919, 2011-Ohio-2745, ¶ 27. In fact, the victims' testimony was largely consistent in describing the horrific series of events that occurred inside appellant's house and Coffman's testimony corroborated significant portions of their testimony.

{¶ 30} Given the evidence presented at trial, which revealed brutal beatings suffered by Tipton and Harman, as well as the rape of Pascol, the jury did not lose its way

---

[3] While appellant argues that Coffman received a four-year prison sentence, at the time of her testimony she had not been sentenced and faced a maximum possible sentence of nine years in prison. (Tr. Vol. 5 at 706). There was no promised sentence as part of her agreement.

or create a manifest miscarriage of justice. Accordingly, appellant's convictions are not against the manifest weight of the evidence. That conclusion is also dispositive of his claim that his convictions were not supported by sufficient evidence. *Gravely*. Accordingly, we overrule appellant's first assignment of error.

## III. Conclusion

{¶ 31} Having overruled appellant's three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN, P.J., and SADLER, J., concur.