[Cite as *State v. Brown*, 2022-Ohio-4073.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | No. 22AP-38 |
| | | (C.P.C. No. 19CR-5961) |
| Plaintiff-Appellee, | : | |
| v. | | No. 22AP-39 |
| | : | (C.P.C. No. 19CR-5834) |
| Jackie L. Brown, | : | No. 22AP-40 |
| | | (C.P.C. No. 19CR-4241) |
| Defendant-Appellant. | : | |
| | | No. 22AP-41 |
| | : | (C.P.C. No. 18CR-3872) |
| | : | & |
| | : | No. 22AP-42 |
| | | (C.P.C. No. 17CR-6212) |
| | : | |
| | | (REGULAR CALENDAR) |
| | : | |

D E C I S I O N

Rendered on November 15, 2022

**On brief:** *G. Gary Tyack,* Prosecuting Attorney, and *Paula M. Sawyers.* **Argued:** *Paula M. Sawyers.*

**On brief:** *Yeura R. Venters*, Public Defender, and *Leon J. Sinoff*. **Argued:** *Leon J. Sinoff.*

APPEALS from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Defendant-appellant, Jackie L. Brown, appeals from judgments of conviction, pursuant to guilty pleas, and sentences imposed by the Franklin County Court of Common Pleas. For the following reasons, we affirm.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}   Brown's appeals, which this court consolidated sua sponte, arise from judgments and sentences in five criminal cases; we begin by briefly outlining the charges against Brown in each case.

{¶ 3}   On November 15, 2017, Brown was indicted in Franklin C.P. No. 17CR-6212, on one count of escape, a second-degree felony in violation of R.C. 2921.34.  The state alleged Brown was confined at a community-based correctional facility because of a prior felony conviction and purposely failed to return to the facility after being granted leave.

{¶ 4}   The following year, on August 9, 2018, Brown was indicted in Franklin C.P. No. 18CR-3872 on one count of improperly handling a firearm in a motor vehicle, a fourth-degree felony in violation of R.C. 2923.16; one count of having a weapon while under disability, a third-degree felony in violation of R.C. 2923.13, with a firearm specification; and one count of tampering with evidence, a third-degree felony in violation of R.C. 2921.12, with a firearm specification.  The state alleged Brown came "into contact with the Columbus Police Department" while in possession of an operable, loaded firearm, which he was prohibited from having "due to multiple prior offense of violence convictions." (Apr. 28, 2021 Tr. at 12.)

{¶ 5}   A year later, on August 27, 2019, Brown was indicted in Franklin C.P. No. 19CR-4241 on two counts of failure to appear after having been released on recognizance, both fourth-degree felony offenses in violation of R.C. 2937.99.  The state alleged Brown was set for trial in Case No. 17CR-6212 on August 12, 2019 and failed to return to court after a lunch break.

{¶ 6}   Later that same year, on November 8, 2019, Brown was indicted in Franklin C.P. No. 19CR-5834 on one count of grand theft of a motor vehicle, a fourth-degree felony in violation of R.C. 2913.02; one count of burglary, a second-degree felony in violation of R.C. 2911.12; and one count of theft, a fifth-degree felony in violation of R.C. 2913.02.  In that case, the state alleged Brown trespassed by force into an occupied structure with the intent to commit theft, and also knowingly deprived the victim of her motor vehicle.

{¶ 7}   Finally, on November 15, 2019, Brown was indicted in Franklin C.P. No. 19CR-5961 on one count of possession of heroin, a third-degree felony in violation of R.C. 2925.11, with a money-forfeiture specification, and two counts of possession of a fentanyl-

related compound, fourth-degree felonies in violation of R.C. 2925.11, each with a money-forfeiture specification. The state alleged Brown was found in possession of a substance that was later tested and confirmed to be heroin, and in possession of money related to drugs.

{¶ 8} Brown ultimately entered into a plea agreement on April 28, 2021, providing that he would plead guilty to certain charges in each of the five cases. He pleaded guilty in Case No. 17CR-6212 to one count of escape, a second-degree felony. In Case No. 18CR-3872, he pleaded guilty to one count of having a weapon while under disability, a third-degree felony, with a firearm specification. He pleaded guilty in Case No. 19CR-4241 to one count of failure to appear, a fourth-degree felony. In Case No. 19CR-5834, Brown pleaded guilty to burglary as third-degree felony, a lesser included offense of the second-degree felony burglary charge in the indictment. Lastly, in Case No. 19CR-5961, Brown pleaded guilty to one count of possession of heroin, a third-degree felony, with a money-forfeiture specification.

{¶ 9} Under the plea agreement, there was a joint recommendation that Brown be released on house arrest pending sentencing. There was also a joint recommendation that a total 15-year term of imprisonment be imposed if Brown violated the conditions of house arrest or failed to appear for sentencing. The plea agreement did not include a joint recommendation as to the appropriate sentence if Brown complied with the conditions of house arrest. As part of the plea agreement, Brown waived his right to withdraw his guilty pleas under Crim.R. 32.1.

{¶ 10} Near the beginning of the plea hearing, the trial court explained the potential consequences of failing to comply with the conditions of house arrest:

> THE COURT: Part of the deal, as I understand it informally from the lawyers and I believe is reflected in these papers, is that we'll give you house arrest this summer to take care of some family arrangements, and then have your sentencing in September. Do you understand that dire consequences will follow if you don't show up this September?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you understand that if you get caught doing any crimes away from the house this summer, it would not only violate your bond in any existing case, but you could get indicted for yet more cases if you go out and get drugs and get

caught, or you go out and have an auto accident that it's your fault because you're out drinking and driving, or you do something else this summer? This isn't a free pass on anything while you're on house arrest. Do you understand that?

The Defendant: Yes, sir.

(Apr. 28, 2021 Tr. at 4-5.)

{¶ 11} The trial court further explained the difference between the potential maximum and minimum sentences Brown would face at sentencing:

THE COURT: Now, there is not a guarantee about what your sentence is going to be. It's my understanding that if we add up all these cases, that you could get something in the range of 21 years in prison, but that the minimum that I have to send you to, the last I heard, four years and a quarter, four years and three months.

[THE PROSECUTOR]: I agree, Your Honor. Thank you.

THE COURT: Mr. Brown, when you come in in September, you can't say, "You know, Judge, you're a great guy. How about probation for all this stuff?" If you enter these pleas, I've got to send you to prison because that's required on some of these pleas that you're contemplating making here this afternoon. The question is, [i]f you come in, you've behaved yourself, do I go over four years and three months? Or do I give you the minimum? Or something close to the minimum? The state is going to argue for more time than the minimum.

But part of what you really got the opportunity to do yourself is to show us this summer that you'll behave yourself, you'll honor the house arrest rules, you'll be squeaky clean, no drugs, no guns, no nothing, and you'll show up in September. That's going to keep the sentence on the lower end rather than pushing it up toward 21 years. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: But there's no promise today from me about what the sentence is going to be, because I'm going to get more information over the summer about you and whether you honor this deal. It's very much up in the air, if you enter these pleas, what the final number is going to be, all right?

THE DEFENDANT: Yes, sir.

(Apr. 28, 2021 Tr. at 7-9). The trial court then reviewed the details of each guilty plea, including the minimum penalties and the rights waived by pleading guilty, individually with Brown.

{¶ 12} The trial court ordered Brown to be released on house arrest, with a sentencing hearing scheduled for September 16, 2021. Under the order, Brown was only permitted to leave home for emergency medical reasons, consultation with his attorney, or to travel to court. The court also ordered a pre-sentence investigation ("PSI"). Near the end of the plea hearing, the trial court reiterated the importance of complying with the conditions of house arrest:

> One of the things I'm trying to say, Mr. Brown -- and I'm tired and I'm sorry -- if you have any questions about what your obligations are this summer, call [defense counsel]. Don't hesitate. You're not bothering him. And if he has some issue that he thinks I need to make a decision about, he'll call the prosecutor and they'll come and see me and we'll try and work through it. But please don't just guess about what you're supposed to do on house arrest and then make a mistake and then we have issues in the fall about whether you get that 15 years, okay?

(Apr. 28, 2021 Tr. at 39.) Brown responded affirmatively to the trial court's admonition.

{¶ 13} On July 12, 2021, the trial court noted on the docket that Brown had failed to comply with the conditions of house arrest, including making unauthorized movements on multiple days without providing documentation to verify those movements were for authorized purposes. Then on July 14, 2021, the trial court issued a capias directing that Brown be taken into custody for failure to comply with the court's order. The court also issued an order requiring Brown to show cause before September 13, 2021, to establish why judgment should not be entered against him on his recognizance bond; notice of that order sent by regular mail to the house arrest address was returned as undeliverable. The trial court withdrew the PSI due to Brown's failure to comply. Brown was arrested on December 9, 2021. On December 13, 2021, the trial court entered an order scheduling a sentencing hearing for January 13, 2022. The following day the trial court scheduled another hearing for December 15, 2021 ("the December 15th hearing").

{¶ 14} At the December 15th hearing, Brown's counsel conceded Brown had violated the conditions of house arrest but asserted some of the violations were for purposes of medical treatment and that Brown had been hospitalized four or five times. Brown alleged he provided documents to the probation department to prove that he left home to obtain medical treatment, but the probation department reported to the court that it had not

received any documents. Brown's counsel requested a "reasonable continuance" so he could obtain documents from Brown's friend to prove the medical treatment. (Dec. 15, 2021 Tr. at 6.) The trial court denied the continuance request and proceeded with sentencing.

{¶ 15} Brown's trial counsel then asserted Brown also violated the conditions of house arrest due to safety issues involving himself and his daughter. Because there was an unidentified individual in the courtroom, Brown's counsel requested the trial court clear the courtroom of non-essential personnel so Brown could freely discuss the matter with the court. The trial court denied the request, concluding Brown failed to demonstrate a sufficient need to close the courtroom to the public. Notwithstanding the trial court's refusal to close the courtroom, Brown explained that he and his daughter were threatened because he had made a proffer of information related to another criminal matter. Brown claimed he entered the plea agreements so he could ensure his daughter's safety and indicated some of his house arrest violations were related to obtaining secure housing for himself and his daughter.

{¶ 16} Brown's trial counsel requested the court sentence Brown to something less than the joint recommendation, while the state urged the trial court to apply the joint recommendation. The trial court noted it had not been advised of any risks to Brown's safety while he was on house arrest. The court found Brown failed to comply with the conditions of house arrest and that no PSI had been prepared. Despite Brown's noncompliance with the house arrest conditions, the trial court concluded it was necessary to deviate downward from the jointly recommended sentence. The court imposed 6 years of imprisonment in Case No. 17CR-6212, 36 months of imprisonment in Case No. 18CR-3872, 12 months of imprisonment in Case No. 19CR-4241, 12 months of imprisonment in Case No. 19CR-5834, and 12 months of imprisonment in Case No. 19CR-5961, with all sentences imposed consecutively, for a total term of 12 years of imprisonment. Brown timely appealed from the judgment entries in each of the five cases.

## II. ASSIGNMENTS OF ERROR

{¶ 17} Brown assigns the following as trial court error:

> [1.] The Trial Court Abused Its Discretion in Denying
> Defendant's Request for a Reasonable Continuance of

Defendant's Sentencing, Violating Mr. Brown's Constitutional Rights to Due Process of Law at his Sentencing.

[2.] The Trial Court Abused Its Discretion in Failing to Conduct a Hearing on Defendant's Request to Clear the Courtroom at Sentencing, Violating Mr. Brown's Rights to Due Process, a Full Allocution, and a Meaningful Mitigation.

[3.] The Sentencing Proceeding Violated Mr. Brown's Rights to Due Process of Law By Cumulative Error, Resulting in a Fundamentally Unfair Sentencing Proceeding.

## III.  LEGAL ANALYSIS

## A. Denial of continuance request

{¶ 18} Brown argues in his first assignment of error that the trial court abused its discretion by denying the request for a continuance of the sentencing hearing.  Brown's trial counsel requested the continuance to try to obtain documents establishing that some of Brown's house arrest violations were for medical treatment.

## 1. Standard of review

{¶ 19} " 'The grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge.' "  *Columbus v. Catudal*, 10th Dist. No. 18AP-229, 2019-Ohio-1137, ¶ 10, quoting *State v. Unger*, 67 Ohio St.2d 65, 67 (1981).  *See also Ungar v. Sarafite*, 376 U.S. 575, 589 (1964) ("The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel.").  " 'An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion.' "  *Catudal* at ¶ 10, quoting *Unger* at 67.  An abuse of discretion occurs when a decision is unreasonable, arbitrary, or unconscionable.  *State v. Angel*, 10th Dist. No. 19AP-771, 2021-Ohio-4322, ¶ 68, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).  There " 'are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process' " and the determination must be made based on the circumstances of each case.  *Catudal* at ¶ 10, quoting *Unger* at 589.

{¶ 20} In *Unger*, the Supreme Court of Ohio adopted a balancing test that weighs the potential prejudice to a defendant resulting from denial of a continuance against "concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." *Unger* at 67.  The court outlined multiple factors

to be considered when ruling on a motion for continuance, including: (1) the length of the delay requested, (2) whether other continuances have been requested and received, (3) the inconvenience to litigants, witnesses, opposing counsel and the court, (4) whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived, (5) whether the defendant contributed to the circumstance giving rise to the request, and (6) other relevant factors, depending on the circumstances of each case. *Id*. at 67-68.

{¶ 21} The trial court did not expressly address the *Unger* factors in denying Brown's continuance request. Brown argues the decision is therefore entitled to reduced deference. In support of this argument Brown cites decisions from the Fourth and Eleventh District Courts of Appeals suggesting that failure to analyze the *Unger* factors may constitute an abuse of discretion. Those two cases, *Rice v. Lewis*, 4th Dist. No. 09CA3307, 2010-Ohio-1077, and *DeFranco v. DeFranco*, 11th Dist. No. 2000-L-147 (Sept. 14, 2001), both involved circumstances where denial of the requested continuance effectively forced the requesting party to proceed without legal counsel. Denial of Brown's continuance request in this case did not have the same effect. Additionally, in prior cases we have noted a trial court's failure to expressly consider the *Unger* factors without finding it to be a per se abuse of discretion. *See Roncone v. Bialkowski*, 10th Dist. No. 06AP-1181, 2007-Ohio-3326, ¶ 14 (noting that nothing in the record indicated the magistrate engaged in any consideration of the *Unger* factors, but not reversing on that basis).

**2. Analysis of the *Unger* factors**

{¶ 22} Brown argues the *Unger* factors weighed strongly in favor of granting his continuance request, asserting five factors weighed in his favor and only one (the fifth factor) was neutral. Based on our analysis of the *Unger* factors, we disagree.

{¶ 23} The first *Unger* factor is the length of the delay requested. Brown's trial counsel requested a "reasonable continuance" so that he could "at least try to gather [the medical] documents." (Dec. 15, 2021 Tr. at 6.) Brown's trial counsel indicated he would not be able to get the documents in "the next couple of hours," because Brown did not have them, but claimed one of Brown's friends had the documents. (Dec. 15, 2021 Tr. at 6.) On appeal, Brown argues his trial counsel sought a brief continuance "numbered in days, not months." (Appellant's Brief at 22.) We note, however, that Brown's trial counsel also advised the court he had requested copies of the medical documents while Brown was still

on house arrest and had not received them. This indicates Brown's trial counsel may not have been able to obtain the documents as quickly as Brown now suggests. Based on the open-ended nature of the continuance request, combined with the fact that Brown previously failed to provide the trial court or his counsel with the documents, we conclude the first *Unger* factor was, at best, neutral.

{¶ 24} The second *Unger* factor is whether other continuances had been requested and received. Brown claims this factor weighed in his favor because it was his first continuance request. The state asserts that more than 20 continuances had been granted during the pendency of the five criminal cases; while some were due to COVID-19 restrictions and others were by joint motion, at least 10 continuances were on Brown's sole motion. In response, Brown claims the earlier continuances occurred during the "negotiation phase" of the cases and that this was his first continuance request related to sentencing. (Appellant's Reply Brief at 5.) Brown fails to cite any court decisions adopting such a bifurcated approach when analyzing whether prior continuances have been granted. Because Brown had requested and received many prior continuances, the second *Unger* factor weighed against granting Brown's request.

{¶ 25} The third *Unger* factor is the inconvenience to litigants, witnesses, opposing counsel, and the court resulting from a continuance. Brown argues a continuance would not have caused any inconvenience, asserting no witnesses were present to speak at sentencing and that opposing counsel and the court could easily be present for sentencing in the future. As the trial court noted, however, the original case had been pending on its docket since 2017, and Brown's additional offenses in the intervening years added to the court's docket. It is unclear whether there would have been any inconvenience to the state because the trial court denied the continuance request without asking the prosecutor to respond. The trial court and the state were present and ready to proceed with sentencing at the December 15th hearing. Under these circumstances, the third *Unger* factor was neutral.

{¶ 26} The fourth *Unger* factor is whether the requested delay is for legitimate reasons or is dilatory, purposeful, or contrived. Brown argues his trial counsel had a good-faith belief that there were medical records that would explain some of the house arrest violations, and that those records could be obtained if a continuance was granted. He

further argues he received no benefit from delaying the sentencing hearing because he was incarcerated. The state asserts the continuance request was merely an attempt to delay sentencing, claiming the medical documentation was not relevant because it would not excuse all of Brown's house arrest violations. Because Brown was incarcerated awaiting sentencing and because the purported medical documentation might have justified at least some of his house arrest violations, there was a legitimate reason for him to seek the continuance. Therefore, the fourth *Unger* factor weighed in favor of granting the continuance.

{¶ 27} The fifth *Unger* factor is whether the defendant contributed to the circumstance giving rise to the continuance request. Brown argues he did not contribute to the need for a continuance because he was incarcerated and lacked access to his medical records. However, Brown could have provided documentation of his medical treatment to his counsel, or the trial court, at any point prior to his arrest in December 2021. As noted above, Brown's trial counsel indicated he had previously requested copies of the relevant documents and had not received them. Accordingly, the fifth *Unger* factor weighed against granting the continuance request.

{¶ 28} Finally, the sixth *Unger* factor incorporates any other relevant factors, depending on the unique facts of the case. Brown argues the trial court should have considered the substantial difference between the potential minimum sentence and the joint recommendation if he violated the house arrest conditions. Brown further argues the court should have considered the brief time between his arrest on December 9, 2021, and the December 15th hearing, and that the court was acting earlier than the scheduled sentencing date. Regarding the difference between the potential sentences, Brown admitted that not all his house arrest violations were for medical treatment; therefore, even if the continuance had been granted and Brown had presented medical records to excuse some of the violations, the jointly recommended sentence would have remained a possible punishment. For that same reason, had the trial court waited until January 13, 2022 to conduct a sentencing hearing, Brown would not have been able to excuse all his house arrest violations. Because Brown would have been subject to the jointly recommended sentence even if the continuance had been granted, the sixth *Unger* factor weighed against granting the continuance.

{¶ 29} The balance of the *Unger* factors weighed against granting the continuance request, with three factors weighing against the request, two being neutral, and only one weighing in Brown's favor. Brown argues this court has found abuse of discretion in denial of a continuance request when the *Unger* factors weighed modestly in favor of the party seeking the continuance, citing *Peters v. Wendy's Internatl., Inc.*, 10th Dist. No. 03AP-657, 2004-Ohio-1012. *Peters* involved an appeal to the common pleas court from a denial of an administrative motion for recognition of additional conditions under a worker's compensation claim. *Peters* at ¶ 3. While the appeal was pending, the appellant was involuntarily committed to a psychiatric ward. *Id.* at ¶ 7. Her counsel sought a continuance of at least 90 days for the merits hearing on the administrative appeal so the appellant could attend the hearing after her involuntary confinement ended, but the common pleas court denied the request. *Id.* at ¶ 17. On appeal from the common pleas court, we concluded the length of the continuance requested was not unreasonable. *Id.* Based on that and the other *Unger* factors, we held that the common pleas court abused its discretion by denying the continuance request. *Id.* at ¶ 20.

{¶ 30} Brown argues that because he sought a shorter continuance and faced a potential lengthy prison term, his case presents a more obvious abuse of discretion than *Peters*. Contrary to Brown's argument, *Peters* is distinguishable from the present case. The involuntary commitment in *Peters* prevented the movant from attending the hearing on the merits of her appeal or assisting her attorney in preparing her case. *Id.* at ¶ 17.[1] By contrast, in this case Brown had ample opportunity to provide medical documentation to his trial counsel before being arrested in December 2021. Additionally, as explained above, several of the *Unger* factors weighed against granting Brown's continuance request or were neutral. Therefore, our conclusion that the trial court abused its discretion in *Peters* does not dictate a similar result in this appeal.

{¶ 31} Ultimately, Brown fails to demonstrate that he was prejudiced by denial of his continuance request. *Unger* at 67; *see also State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, ¶ 92 ("[T]he defendant must show how the denial of a continuance prejudiced

---

[1] We further note that the opposing party in *Peters* did not oppose the continuance request. *Peters* at ¶ 17. In the present case, the trial judge denied Brown's continuance request without seeking a response from the state but based on the other positions taken by the state at Brown's sentencing hearing it appears likely the state would have opposed the request.

him."); *State v. Jones*, 10th Dist. No. 15AP-596, 2016-Ohio-4766, ¶ 16 ("Appellant fails to identify any prejudice resulting from the trial court's denial of his motion for continuance."). The parties agreed to a joint recommendation of 15 years of imprisonment if Brown violated the house arrest conditions. As explained above, at the December 15th hearing Brown admitted that not all his house arrest violations were for medical treatment. Therefore, even if the continuance had been granted and Brown had provided medical documentation, there still would have been unexcused violations and he would have been eligible for the jointly recommended sentence. The trial court had been very clear with Brown at the plea hearing about the penalties he would face if he violated the house arrest conditions. Despite Brown's admitted non-medical house arrest violations, however, the trial court deviated downward from the joint recommendation and sentenced Brown to 12 years of imprisonment. That sentence was less than the jointly recommended 15-year term and substantially less than the potential maximum term of 21 years. Under these circumstances, Brown cannot establish that he was prejudiced by the denial of his continuance request.

{¶ 32} Accordingly, we overrule Brown's first assignment of error.

## B. Failure to conduct a hearing on request to close the courtroom

{¶ 33} In his second assignment of error, Brown argues the trial court abused its discretion by failing to conduct a hearing on his request to close the courtroom to non-essential personnel. Brown's trial counsel claimed that Brown's safety concerns were a "perhaps greater reason" for Brown's noncompliance with the house arrest conditions than his medical issues. (Dec. 15, 2021 Tr. at 8.) Those safety concerns arose from Brown having provided information regarding an unrelated criminal matter. Brown's counsel observed that there was an unknown individual in the courtroom and asked the court to close the proceedings to non-essential personnel so Brown could freely discuss the safety concerns with the trial court. The trial court summarily denied the request, concluding Brown failed to make a sufficient showing of necessity to justify closing the courtroom to the public.

{¶ 34} The right to a public trial is guaranteed by the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution. *State v. Long*, 10th Dist. No. 16AP-708, 2017-Ohio-9322, ¶ 15. " 'The public's right to attend criminal trials is also implicit within the guarantees of the First Amendment.' " *Id.*, quoting *State v. Sowell*,

10th Dist. No. 06AP-443, 2008-Ohio-3285, ¶ 32.  *See also E.W. Scripps Co. v. Fulton*, 100 Ohio App. 157, 170-80 (8th Dist.1955) (Hurd, J., concurring) (discussing history of "open court" concept under the Ohio Constitution and common law).  The Supreme Court of the United States has set forth a four-part test for the closure of a criminal hearing: (1) the party seeking closure must advance an overriding interest that is likely to be prejudiced, (2) the closure must be no broader than necessary to protect that interest, (3) the trial court must consider reasonable alternatives to closing the proceeding, and (4) the trial court must make adequate findings to support the closure.  *State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, ¶ 82, citing *Waller v. Georgia*, 467 U.S. 39, 48 (1984).  We review a trial court's decision on a motion to close the courtroom for abuse of discretion.  *See Long* at ¶ 22 ("[W]e find, under these facts, the trial court abused its discretion by closing the courtroom to the public.").  Therefore, we will only reverse the trial court's decision if it was unreasonable, arbitrary, or unconscionable.  *Angel* at ¶ 68.

{¶ 35} Brown asserts the trial court erred by failing to conduct a hearing on his request to close the courtroom but also concedes that a "whole separate hearing" was not required.  (Appellant's Reply Brief at 9.)  Rather, Brown argues the trial court "need[ed] to provide some forum for defense counsel to explain the basis for the request to close the courtroom."  (Appellant's Reply Brief at 9.)  In this case, Brown's trial counsel had an opportunity to explain, in broad terms, why Brown wanted the courtroom closed.  The trial court clearly understood the reason for the request but noted "[w]e're here to sentence Mr. Brown for his crimes, not what he witnessed or didn't witness or might have heard about on the street."  (Dec. 15, 2021 Tr. at 10.)  Therefore, the trial court did not abuse its discretion by failing to conduct a separate hearing on the request.

{¶ 36} Brown further argues that denial of his request to close the courtroom infringed his right to allocution and prevented him from presenting all mitigating evidence.  With respect to allocution, Crim.R. 32(A)(1) provides that at the time of imposing sentence the trial court must afford counsel an opportunity to speak on behalf of the defendant and ask the defendant personally if he wishes to make a statement on his own behalf.  "The requirement of allocution is fulfilled when the court's conduct clearly shows the defendant and his counsel each had a right to make a statement before sentence is imposed."  *State v. Joseph*, 10th Dist. No. 13AP-752, 2014-Ohio-2733, ¶ 19.  "[T]he purpose of allocution is 'to

permit the defendant to speak on his own behalf or present any information in mitigation of punishment.' " *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, ¶ 204, quoting *State v. Reynolds*, 80 Ohio St.3d 670, 684 (1998). "A trial court does not err by limiting a defendant's presentence statement to those issues that bear upon the sentence and may have mitigative weight." *Id.* In this case, the trial court afforded both Brown and his trial counsel the opportunity to address the court before the sentence was imposed; therefore, Brown's right to allocution was not infringed.

{¶ 37} Although Brown argues the trial court's ruling hindered his ability to present mitigating evidence, he also claims on appeal that the basics of the matters he wished to discuss with the trial court are "plain from the record." (Appellant's Brief at 40.) Brown explained to the trial court that he had proffered information related to another criminal case and that his proffer became public knowledge, resulting in threats to himself and his daughter. Brown claimed he had been "going from hotel to hotel until we got all our stuff in storage" because of the threats. (Dec. 15, 2021 Tr. at 13.) Brown then claimed he would not have signed the plea agreement if not for the threats to his daughter. Thus, the record reflects that Brown was able to inform the trial court about the safety issues that he claimed led him to violate the house arrest conditions. There is nothing in the record suggesting Brown was not able to provide all relevant information to the trial court. Further, there was no proffer at the trial level or on appeal of any additional information Brown would have provided if the court had granted his request to close the courtroom. Because Brown informed the court about his safety concerns despite the denial of his request to close the courtroom, he fails to demonstrate that he was prejudiced by the denial of that request.

{¶ 38} Accordingly, we overrule Brown's second assignment of error.

## C. Cumulative error

{¶ 39} In his third assignment of error, Brown asserts cumulative errors at the sentencing hearing resulted in a fundamentally unfair proceeding. "Although errors at trial singularly 'may not rise to the level of prejudicial error, a conviction will be reversed where the cumulative effect of the errors deprives a defendant of the constitutional right to a fair trial." *State v. Ferrell*, 10th Dist. No. 19AP-816, 2020-Ohio-6879, ¶ 42, quoting *State v. DeMarco*, 31 Ohio St.3d 191 (1987), paragraph two of the syllabus. Cumulative error cannot be established "simply by combining [an appellant's] unsuccessful claims together." *Id.*

*See also State v. Graham*, 164 Ohio St.3d 187, 2020-Ohio-6700, ¶ 170 ("Each assertion of ineffective assistance of counsel going to cumulative error depends on the merits of each individual claim; when none of the individual claims of ineffective assistance of counsel have merit, cumulative error cannot be established simply by joining those meritless claims together.").

{¶ 40} Brown alleges the trial court committed five errors that resulted in an unfair sentencing process: (1) denial of his continuance request, (2) denial of his request to close the courtroom, (3) failure to inquire into the voluntariness of his plea after he referred to pressure and threats, (4) failure to reorder a PSI, and (5) conducting the sentencing hearing earlier than scheduled.

{¶ 41} As discussed above, we conclude the trial court did not err by denying Brown's continuance request or his request to close the courtroom. Because those claims are meritless, they cannot contribute to a finding of cumulative error.

{¶ 42} Brown asserts the trial court erred by failing to inquire into the voluntariness of his pleas when he made statements at the sentencing hearing referring to threats and pressure. At the sentencing hearing, Brown claimed that "[t]hey threatened my daughter * * * [t]hat is what even made me sign." (Dec. 15, 2021 Tr. at 12.) Brown further declared "I would have never signed it, but the pressure, they knew that I was going to sign, because I kept telling them I need to get out." (Dec. 15, 2021 Tr. at 14.) Brown argues on appeal that these statements should have led the trial court to re-examine the voluntariness of his guilty pleas.

{¶ 43} Generally, we have held that a defendant's after-the-fact, self-serving claim that a plea was not voluntary is insufficient to overcome the presumption that the plea was voluntary, when nothing else in the record supports the defendant's claim. *See State v. Lopez*, 10th Dist. No. 16AP-478, 2017-Ohio-4048, ¶ 26, quoting *State v. Honaker*, 10th Dist. No. 04AP-146, 2004-Ohio-6256, ¶ 9, quoting *State v. Laster*, 2d Dist. No. 19387, 2003-Ohio-1564 (" ' "[W]here nothing in the record supports a defendant's claim that his plea was not knowingly and voluntarily made other than his own self-serving affidavit or statement, the record is insufficient to overcome the presumption that the plea was voluntary." ' "). Here, Brown did not directly request that the court re-examine the voluntariness of the plea. The trial court thoroughly reviewed the plea agreements with

Brown at the plea hearing and explained the consequences of pleading guilty to each charge. Brown did not make any comments at the plea hearing suggesting his pleas were involuntary. At one point during the plea hearing Brown requested additional time to confer with counsel and the trial court granted a recess so they could confer. Brown also expressly refuted that he was subject to any pressure at the plea hearing:

> THE COURT: As things stand right now, Mr. Brown, is anybody pressuring you, including the people in the back of the courtroom that are friends of yours, I guess? Anybody twisting your arm directly or indirectly to plead these cases out?

> THE DEFENDANT: No, sir.

(Apr. 28, 2021 Tr. at 26.)

{¶ 44} Moreover, at the sentencing hearing, Brown did not claim he was innocent; rather, he alluded to external pressures that motivated him to enter the plea agreements. Under these circumstances, Brown's vague, self-serving claims at the sentencing hearing did not require the trial court inquire further. *See State v. Darks*, 10th Dist. No. 05AP-982, 2006-Ohio-3144, ¶ 18 ("When a defendant protests innocence after a guilty plea has been accepted, a trial court is not required to inquire into a defendant's reasons for pleading guilty despite the assertions of innocence."); *see also State v. Asher*, 1st Dist. No. C-180163, 2019-Ohio-1317, ¶ 7 ("Once a defendant has pled guilty and that plea has been accepted in accordance with Crim.R. 11, courts are not required to probe into a defendant's reasons for pleading guilty, despite a later claim of innocence."); *State v. Reeves*, 8th Dist. No. 100560, 2014-Ohio-3497, ¶ 13 ("[W]hen a defendant makes claims of innocence after a guilty plea has been accepted, a trial court has no duty to inquire into a defendant's reasons for pleading guilty.").

{¶ 45} Brown also claims the trial court erred by not re-ordering a PSI and by conducting the sentencing earlier than originally scheduled. Brown argues it was arbitrary and unreasonable to proceed with sentencing at the December 15th hearing because the court had previously entered an order scheduling sentencing for January 13, 2022, and because the order setting the December 15th hearing did not indicate it would be a sentencing hearing.

{¶ 46} "Generally, an appellate court will not consider any error which could have been raised in the trial court but [was not called] to the trial court's attention at a time when

such error could have been avoided or corrected by the trial court." *State v. Wilkins*, 10th Dist. No. 18AP-797, 2020-Ohio-3428, ¶ 72. *See also Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121 (1997) ("[W]e have long recognized, in civil as well as criminal cases, that failure to timely advise a trial court of possible error, by objection or otherwise, results in a waiver of the issue for purposes of appeal."). In this case, Brown failed to request a PSI or object to proceeding with sentencing at the December 15th hearing. He claims that denial of his continuance request "was a clear signal to defense counsel that additional motions for a continuance were futile acts." (Appellant's Reply Brief at 18.) However, the December 15th hearing began with a discussion of jail time credit, which was a clear indication that the trial court was contemplating sentencing issues—yet Brown's trial counsel failed to request a PSI or object to proceeding with sentencing at that point, before the continuance request was denied. Notably, Brown's trial counsel failed to call the court's attention to the order scheduling a sentencing hearing for January 13, 2022, or request that the court defer sentencing until that scheduled date. Thus, Brown failed to request a PSI or object to proceeding with sentencing at a time when the trial court could have addressed those issues.

**{¶ 47}** None of the individual claims of error asserted in Brown's third assignment of error have merit; therefore, he cannot demonstrate cumulative error by combining these meritless claims. Accordingly, we overrule Brown's third assignment of error.

## IV. CONCLUSION

**{¶ 48}** For the foregoing reasons, we overrule Brown's three assignments of error and affirm the judgments of the Franklin County Court of Common Pleas.

*Judgments affirmed.*

BEATTY BLUNT and McGRATH, JJ., concur.

————————————